**Pat Osborne DAILY, Petitioner,**

v.

**Langhorne M. BOND, Administrator, F.A.A., Respondent.**

No. 78–3122.

United States Court of Appeals, Ninth Circuit.

Submitted June 30, 1980.

Decided July 21, 1980.

Rehearing Denied Sept. 22, 1980.

Walter P. Christesen, San Diego, Cal., for petitioner.

Wendy M. Keats, Washington, D.C., for respondent.

Before GOODWIN, POOLE and FERGU-SON, Circuit Judges.

PER CURIAM.

Pat Osborne Daily petitions for review of an order which suspended his pilot certificate issued by the National Transportation Safety Board (NTSB) after an airplane, which he was attempting to start, caught fire.

The Federal Aviation Administration (FAA) charged that Daily had violated 14 C.F.R. § 91.9 by operating (attempting to start) the aircraft in a careless or reckless manner, and 14 C.F.R. § 91.29(a) by operating (attempting to start) an aircraft which was not in an airworthy condition. The FAA suspended his certificate. The administrative law judge, on appeal, set aside the suspension order because he found that the FAA had failed to establish that Daily had "operated" the plane, within the meaning of the regulations. The NTSB reversed the administrative law judge and reinstated the suspension order. The petition presents three issues:

(1) Does attempting to start mean "operating"?

(2) Is there substantial evidence to support the NTSB's findings that Daily violated §§ 91.9 and 91.29(a)?

(3) Are the regulations unconstitutionally vague?

I. *"Operating"*

Daily argues that he did not violate § 91.9 because he did not *operate* the plane. The administrative law judge's decision may also be read as saying Daily did not "operate" the plane because it was not determined that he was the pilot. A copilot who

assumes pilot-in-command functions as Daily did in this case, however, may be held responsible as pilot. *Ronald H. Conway*, 36 C.A.B. 951, 953 (1962); *Jones & Scott*, 36 C.A.B. 1018 (1962).

"Operate" is defined in 14 C.F.R. § 1.1 as follows:

" 'Operate', with respect to aircraft, means use, cause to use or authorize to use aircraft, for the purpose (except as provided in 91.10 of this chapter) of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise)."

Daily contends that because he was not using the aircraft for purposes of air navigation, he should not have been charged under § 91.9, but under § 91.10, which covers operation of an aircraft for purposes other than air navigation.

Daily concedes that operate "mean incident to flight and an integral part of it" but argues that because the plane had not moved, it was not incident to flight. Moreover, he argues, a final decision to fly the plane would not have been made until the aircraft was at the end of the runway, a final checklist of compliance had been made, and clearance for takeoff had been granted.

█ These distinctions do not appear to be meaningful. In *Administrator v. Pauly*, 2 N.Trans.S.Dec. 1369 (1975), the pilot attempted to jump start an aircraft using the battery of a car parked nearby. He failed to secure the plane or block the wheels, and no qualified person was at the controls. When the plane started, it leaped forward, damaging the car and injuring a bystander. The NTSB held that "since the attempted start was preparatory to flight, it was for the purpose of air navigation and thus constituted operation of the aircraft within the intendment of section 91.9." *Id.* at 1370. We agree.

## II. *Sufficiency of Evidence*

█ There was adequate proof of negligence. Daily knew that a generator had been disconnected. A prudent pilot would realize that when a generator is removed, electrical wires must be disconnected and, hanging loose, create a potentially dangerous situation. Under these circumstances, the agency could find that it was careless of Daily to attempt to start the engines.

Furthermore, although under normal circumstances it may not have been necessary to conduct operations other than a routine pre-flight inspection, Daily had noticed that maintenance was incomplete, and a reasonably prudent pilot would have checked the log book to see if all maintenance was completed or would have conducted a more extensive inspection.

Section 91.29 prohibits any person from operating a civil aircraft unless it is in an airworthy condition. Daily, the administrative law judge and the NTSB all agree that the plane was not airworthy when Daily attempted to start it.

Daily argues that although the plane was not airworthy, he did not know, and could not reasonably have known, this fact until after the accident. This argument was properly rejected. He knew, or should have known, that the rotating beacon had been removed, as it was sitting on the seat inside the cabin entry door. "Flyability is not the same as airworthiness." *Adm. v. Blackwell*, 2 N.Trans.S.Dec. 360 (1973).

## III. *Constitutionality*

Daily argues that the regulations are unconstitutional because "[t]here is no real definition of what operate means and the regulation does not give fair warning of what conduct is proscribed."

█ A statute is not unconstitutionally vague if it gives fair warning of the proscribed conduct. *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–598, 9 L.Ed.2d 561 (1963); *Doe v. CAB*, 356 F.2d 699, 701 (10th Cir. 1966). Cases such as *Pauly* have clarified the meaning of § 91.9, establishing that one who starts the aircraft with the intent to fly it is operating the aircraft. The regulations clearly governed Daily's conduct.

█ Daily also argues that there exist several hypothetical situations in which the

applicability of §§ 91.9 and 91.29 would be uncertain. However, Daily, whose conduct in this case was certainly proscribed, cannot challenge the regulations on the ground that their meaning may be unclear in other circumstances. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974).

The regulations, as applied, are constitutional.

Affirmed.