GO LEASING, INC., Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD; & Donald D. Engen, Administrator, Federal Aviation Administration, Respondent.

No. 85–7401.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1986.

Decided Sept. 30, 1986.

Lawrence B. Smith, Tucson, Ariz., Edward S. Coleman, Santa Monica, Cal., for petitioner.

Peter Lynch, Acting Chief F.A.A., Washington, D.C., for respondent.

Before SCHROEDER, BOOCHEVER and HALL, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Federal Aviation Administration (FAA) issued an emergency order revoking Go Leasing, Inc.'s operating certificate for multiple violations of Federal Aviation Regulations (FARs). Although most FAA orders of revocation are stayed pending appeal, emergency orders are not. An administrative law judge (ALJ) modified the emergency revocation, imposing instead a ten-month suspension of Go Leasing's certificate. The National Transportation Safety Board (NTSB) affirmed. Go Leasing appeals, raising numerous challenges to the agency's action based upon claims that the FAA did not follow its governing statutes and regulations, the FAA's internal policies and regulations were not promulgated in accordance with the Administrative Procedure Act, and certain FAA regulations and governing statutes are unconstitutional. We affirm.

## FACTS

Go Leasing, Inc. is one of three affiliated aviation companies, each of which held an

operating certificate issued by the FAA. Go Leasing holds a Part 125 certificate authorizing it to operate certain aircraft other than in air transportation. Part 125 refers to 14 C.F.R. Part 125, which regulates the operation of specified aircraft. "No [Part 125] certificate holder may conduct any operation which results directly or indirectly from any person's holding out to the public to furnish transportation." 14 C.F.R. § 125.11 (1986). Such operations require an air carrier certificate under 14 C.F.R. Part 121.

During February and March 1985, the FAA conducted an extensive inspection of Go Leasing and its affiliates. All three companies shared the same principal office, company officers, directors, inspectors, chief pilots, and other personnel. Widespread violations of FAA certificate and recordkeeping rules were found, as were several safety violations. On May 2, 1985, the FAA issued an emergency order revoking each company's certificate. The FAA specifically charged that Go Leasing had failed to exercise the degree of care, judgment, and responsibility required of the holder of a Part 125 certificate, and that Go Leasing demonstrated a lack of qualifications for a Part 125 certificate. Go Leasing sought an expedited hearing pursuant to 49 C.F.R. §§ 821.54–821.57 (1985).

On June 7, 1985, the ALJ issued an oral decision following a four-day evidentiary hearing. The ALJ dismissed some of the regulatory violations charged in the emergency revocation order and found, as to the numerous charges sustained, that Go Leasing had not been shown to lack qualifications to hold a Part 125 operating certificate. The ALJ held, however, that "in light of the regulatory violations established [the FAA's order is] modified to provide for suspension of 10 months rather than revocation." With that modification, the ALJ affirmed the FAA's emergency order. Go Leasing appealed the ALJ's decision to the NTSB, challenging the ALJ's finding that "[t]he most serious charge against [Go Leasing was] that it operated [57] commercial flights when it did not hold appropriate certificate authority" in viola-

tion of 14 C.F.R. § 125.11(b) (conducting operations resulting from a holding out to the public to furnish air transportation) and 14 C.F.R. § 121.3(e) (engaging in air transportation without appropriate operating certificate).

## STANDARD OF REVIEW

 In this appeal, Go Leasing does not challenge the sufficiency of the evidence supporting the ALJ's findings of numerous FAR violations. Therefore, the factual and credibility determinations of the ALJ and NTSB are accepted as established. 49 U.S.C. § 1486(e) (1982). Rather, Go Leasing raises a variety of legal issues surrounding the statutory and regulatory authority of the FAA and the NTSB, including assertions that FAA regulations and internal policies were invalidly promulgated in violation of the notice and comment mandates of the Administrative Procedure Act, and that the FAA's enforcement action deprived Go Leasing of due process. We review purely legal issues de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## ANALYSIS

Section 609(a) of the Federal Aviation Act (the Act), 49 U.S.C. § 1429(a) (1982), authorizes the Administrator of the FAA to issue orders suspending, revoking, amending, or modifying aviation certificates "[i]f ... he determines that safety in air commerce or air transportation and the public interest requires." The Administrator has discretionary authority to revoke a certificate immediately if he determines that "an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order." *Id.*

The gravamen of Go Leasing's arguments is that the FAA does not have the discretion to choose among a number of statutory enforcement actions, that in this case the FAA imposed what Go Leasing terms "punitive" certificate revocation ac-

tion under section 609 of the Act, 49 U.S.C. § 1429(a), that section 609 does not authorize sanctions for regulatory violations, and that the FAA should have used civil money penalties with right to jury trial under sections 901 and 903 of the Act, 49 U.S.C. §§ 1471(a)(1) and 1473(b)(1). Go Leasing also advances several arguments under the Administrative Procedure Act (APA) and the due process clause of the fifth amendment.

■ Before we proceed with our analysis of the legitimate issues presented in this appeal, we reject Go Leasing's numerous and repetitive assertions of a continuing conspiracy by the FAA to cover up its alleged lack of authority for so-called punitive certificate actions. Nor do we approve of Go Leasing's impugning of the ethics of FAA officials, its counsel, and of the NTSB. There is no evidence whatever of any cover-up or of any unethical conduct on the part of the FAA or NTSB.

### 1. Agency Discretion To Select Statutory Sanctions

Go Leasing argues that it has a statutory right to receive a civil money penalty for violation of safety regulations, and to contest that penalty through jury trial, instead of the certificate action taken.

Under the Act, the Administrator is charged with responsibility for safety of flight of civil aircraft in air commerce. 49 U.S.C. app. § 1421(a). To meet this goal, Congress has authorized a number of enforcement actions, including section 609 emergency certificate action, 49 U.S.C. § 1429(a), civil penalties, 49 U.S.C. § 1471(a)(1), summary seizure of aircraft, 49 U.S.C. § 1473(b)(1), and writs of injunction, 49 U.S.C. § 1487(a), among others.

■ Section 901 of the Act, 49 U.S.C. § 1471(a)(1), provides for a maximum $1,000 civil penalty for each violation of the Act, and under 49 U.S.C. § 1473, the party charged may demand a trial by jury to contest the civil penalty. These provisions in no way limit the FAA's discretion to choose to employ the certificate action authorized under section 609 of the Act, 49 U.S.C. § 1429(a). Section 609(a) provides express authority for the Administrator to issue an emergency order revoking or suspending a certificate if safety and the public interest require.

Agencies charged with a prosecutorial function must have flexibility in confronting the varieties of facts presented in particular cases. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969). There is no question that the Administrator has the legal discretion to choose between employing section 609 certificate action and section 901 civil money penalty remedies.

Under section 10(e) of the APA, 5 U.S.C. § 706(2)(A), the relevant inquiry is whether the sanction imposed is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The Supreme Court has specifically stated that "the ... choice of [administrative] sanction [is] not to be overturned unless the Court of Appeals might find it 'unwarranted in law or ... without justification in fact....'" *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973) (quoting *American Power Co. v. SEC*, 329 U.S. 90, 112–13, 67 S.Ct. 133, 145–46, 91 L.Ed. 103 (1946)).

■ The sanctions are clearly authorized by law. We cannot say that the FAA's choice of certificate action was unjustified under the facts of this case. The arbitrary and capricious standard requires a "wide deference" be given to an agency's choice of sanction. *Holmes v. Helms*, 705 F.2d 343, 347 (9th Cir.1983) (per curiam). The FAA issued its emergency order based, in part, upon evidence that Go Leasing flew 57 passenger flights without holding a requisite air carrier certificate under Part 121, lacked adequate management personnel, and had failed to inspect some of its aircraft engines when required. The FAA expressly based its order upon considerations of safety in air commerce and the public interest, 49 U.S.C. § 1429(a), and reviewing courts "cannot reverse the agen-

cy decision simply because it might believe that the public interest could best be served by a different decision." *Holmes*, 705 F.2d at 347.

Further, the fact that the ALJ and the NTSB determined that revocation was not required does not render the FAA's action arbitrary or capricious. The NTSB's imposition of a ten-month suspension demonstrates the seriousness with which the NTSB regarded Go Leasing's violations. The NTSB stated that "although some of the violations found proved admittedly are minor in nature, consideration of those violations in combination with the significant management, maintenance, and certification-related violations precludes the imposition of a minimal sanction or none at all."

We uphold the Administrator's scope of discretion in selecting from among statutory remedies. We hold that Go Leasing has no right to demand that the FAA select a statutory enforcement action that encompasses a jury trial option.

## 2. NTSB's Section 609 Authority to Impose Disciplinary Sanctions

Go Leasing contends that the FAA and the ALJ imposed the revocation and suspension specifically as a punishment, and that section 609 certificate action cannot be invoked for punitive purposes. The record does not show, however, that the FAA imposed the emergency order of revocation with the intent to punish Go Leasing.

At the conclusion of the hearing before the ALJ, counsel for Go Leasing attempted to force the ALJ to state that the ten-month suspension was in fact a punitive sanction. The ALJ refused to characterize the suspension that way, stating, "I have modified the administrator's Complaint. The action taken is a sanction imposed for the regulatory violations found in the Complaint."

Analytically, a case could be made that Congress did not intend that revocation and suspension be imposed for disciplinary purposes. Revocation and suspension can be extremely detrimental, either terminating a business, or in the case of a lengthy suspension, substantially disrupting it with loss of good will. In authorizing revocation and suspension, section 609 refers only to the needs of safety in air commerce or transportation and the public interest, and does not expressly include disciplinary purposes. 49 U.S.C. § 1429(a). Of course, a suspension serves a safety purpose if imposed until such time as the offending carrier or air agency has cured its defective equipment, procedures, or staffing to such an extent as to assure safe operations. A suspension for a longer period can be justified for disciplinary purposes, but discipline itself may serve a safety purpose as a deterrent to an offending carrier and as an example to others. Assuming that Go Leasing's certificate was suspended for disciplinary purposes, our task is to determine whether Congress intended such use of suspension of certificates.

In *Pangburn v. Civil Aeronautics Board*, 311 F.2d 349 (1st Cir.1962), the court examined in detail the legislative history of the 1958 Federal Aviation Act, and expressly upheld the Civil Aeronautics Board's authority to order suspension for disciplinary purposes under section 609. We approve of and set forth the First Circuit's excellent analysis:

Under the Civil Aeronautics Act of 1938, § 609 (52 Stat. 1011, 49 U.S.C. § 559), the Board was authorized to suspend an airman certificate "if the interest of the public so requires," and to revoke such certificate "for any cause which, at the time of the revocation, would justify the Administrator ... in refusing to issue to the holder of such certificate a like certificate." Under Section 609 of the Federal Aviation Act, adopted in 1958, suspension or revocation may be ordered if "safety in air commerce or air transportation and the public interest" requires.

. . . .

The Board takes the position that quite apart from the qualifications or competency of a pilot, it has the right under Section 609 to impose a suspension as a "sanction" against specific conduct or because of its "deterrence" value—either

to the subject offender or to others similarly situated. In short, the Board contends that it may order suspension for disciplinary purposes. We agree with the Board.

Under the provisions of the 1938 Act suspensions were frequently imposed as a deterrent sanction notwithstanding the apparent technical qualifications of the pilot. The imposition of a suspension was challenged under the 1938 Act in *Wilson v. Civil Aeronautics Board*, 100 U.S.App.D.C. 325, 244 F.2d 773 (1957), *cert. den.*, 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75. In that case the petitioner argued that a suspension order could only be issued under Section 609 where there was a demonstration of a lack of technical qualification and that absent such a finding, the Board could only impose a monetary penalty under Section 901. The Court of Appeals for the District of Columbia rejected these contentions. Relying on the consistent administrative practice of over 4,000 such suspensions during the course of administering the Act, the broad discretionary authority which the statute vested in the Board, and a clear recognition of the valuable deterrent effect of such suspensions, the court held that the administrative practice should be sustained for "the most cogent of reasons—air safety." In sum, the court held that the Board could impose suspensions, as a deterrent sanction, "in the interest of the public," because a vital "public interest" was "air safety."

Similarly the Seventh Circuit upheld a deterrent suspension in *Hard v. Civil Aeronautics Board*, 248 F.2d 761 (7th Cir., 1957), *cert. den.*, 355 U.S. 960, 78 S.Ct. 543, 2 L.Ed.2d 534 (1958)....

Since the enactment of the 1958 Act the Board has consistently interpreted it as authorizing a continuation of the previous judicially approved standards and practice of imposing suspension as a disciplinary measure for deterrent purposes. It is well settled that the interpretation by the agency charged with the responsibility of administering the Act is

entitled to great weight. *Power Reactor Development Co. v. International Union of Electricians*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) (citations omitted).

A review of the legislative history of the 1958 Act shows no intention to circumscribe the conditions under which a suspension may be imposed by the Board. Indeed, there is clear indication that it was the Congressional intent to preserve the prior practice in safety proceedings. Thus, Congressman Harris, Chairman of the House committee on Interstate and Foreign Commerce, explained the purpose of the new Section 609 to the House as follows:

> "This right of review by the Board is not intended to change existing relationships as announced by the courts, ... with respect to conditions under which, or the purposes for which safety certificates may be suspended or revoked...." (104 Cong.Rec. 16081, August 4, 1958, emphasis added.)

In short, we find no indication that Congress intended to restrict the Board's interpretation of its authority to invoke suspensions in cases such as this.

311 F.2d at 354–55.

While *Pangburn* concerned suspension of an airman's certificate, the court's analysis is not restricted to a particular type of certificate. The plain language of section 609 authorizes the FAA to suspend or revoke "any type certificate," including an air carrier's or air agency's operating certificate, if "safety in air commerce ... and the public interest requires." 49 U.S.C. § 1429(a). Section 609 also expressly authorizes the NTSB to amend, modify, or reverse the FAA's order if the NTSB finds that safety in air commerce or air transportation and the public interest do not require affirmation of the FAA's order. *Id.* Read together, we understand these provisions to mean that if the NTSB finds that the FAA's emergency order of revocation under section 609 is not warranted under the circumstances of the case, the NTSB may nonetheless modify the emer-

gency revocation order into a disciplinary suspension order if the NTSB finds that a suspension is required by safety in air commerce and the public interest because of violations of Federal Aviation Regulations. In this case, the FAA charged and the NTSB affirmed numerous FAR violations, including Go Leasing's inadequate management, failure to perform periodic maintenance on some of its aircraft, and operation of 57 flights for which it lacked appropriate certification. We are satisfied that these violations sufficiently implicate safety in air commerce or transportation and the public interest, and we therefore uphold the NTSB's authority to impose a ten-month disciplinary suspension in this case.

### 3. Did FAA Fail to Follow Its Statutes and Guidelines?

Go Leasing asserts that the imposition of an emergency order of revocation violated the FAA's policy that emergency actions should be brought as soon as possible and never for punitive purposes. Go Leasing also contends that the FAA was required by statute to present Go Leasing with a list of violations found during the inspection, and allow Go Leasing to propose remedial action. Go Leasing then argues that the FAA's failure to follow statutes and guidelines was arbitrary, capricious, and a violation of due process.

For its argument that the FAA violated its own guidelines, Go Leasing relies on numerous editions of the FAA's internal manual, most of which are no longer in effect. The gist of Go Leasing's argument is twofold. First, Go Leasing again argues that the FAA imposed an emergency order of revocation for punitive purposes in violation of the FAA's Handbook. Go Leasing argues the FAA instead should have sought an injunction or issued a cease and desist order. This is but another form of Go Leasing's argument against the FAA's exercise of its prosecutorial discretion, which we have already upheld.

The second argument is that the emergency order was issued five weeks after the FAA's inspection of Go Leasing and three months after the FAA had first contacted Go Leasing regarding its flights transporting passengers for Club Med. This delay allegedly violates the agency's guidelines as set forth in the FAA's 1980 manual of procedures which state that emergency actions should be taken as soon as possible after the date of the incident.

■ The FAA concedes that the guidelines emphasize the need for speedy action in emergency situations, but also argues that the guidelines require the FAA to ensure that there is sufficient evidence of an emergency requiring immediate effectiveness of an order. In *Air East, Inc. v. NTSB*, 512 F.2d 1227, 1232 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975), the petitioner made the same argument as Go Leasing does here, that the delay from the time of the investigation and the time it took to review the evidence demonstrates the lack of urgency. The Third Circuit observed that "[this] argument cuts another way as well. It demonstrates that the revocations were not hasty or ill-considered and took place only after serious efforts had been made to establish the validity of the charges." *Id.* The record does not show that the time that the FAA took in conducting its extensive investigation of the three affiliated aviation companies and in preparing its order consisting of 47 pages of findings and charges was unreasonable or an abuse of discretion. Assuming without deciding that Go Leasing may challenge the FAA's alleged failure to follow its own guidelines, we find no violation. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam) (contents of agency manual are not regulations, have no legal force, and do not bind the agency); *Powderly v. Schweiker*, 704 F.2d 1092, 1096, 1098 (9th Cir.1983) (same); *Whaley v. Schweiker*, 663 F.2d 871, 873 (9th Cir.1981) (same).

■ Go Leasing also argues that the FAA was required by section 605 of the Act, 49 U.S.C. § 1425(b), to advise Go Leasing of the discrepancies found and to cooperate with Go Leasing in the inspection.

The record shows, however, that Go Leasing was made aware of the various violations and deficiencies found, and there is no indication that the FAA did not cooperate with Go Leasing. To the extent that Go Leasing argues that section 605 requires the FAA to present Go Leasing with a list of violations and to permit Go Leasing to propose remedial action, Go Leasing is mistaken. Section 605 contains no such requirements.

We hold that the FAA did not violate its statute and internal guidelines.

### 4. Promulgation of Regulations Under the Administrative Procedure Act

Part 13 of 14 C.F.R. is entitled "Investigative and Enforcement Procedures." Subpart C of Part 13 contains procedures relating to "Legal Enforcement Action." 14 C.F.R. § 13.19 (1986) concerns the "Certificate action" challenged in this appeal. It cites as authority and paraphrases section 609 of the Act, 49 U.S.C. § 1429(a).

Go Leasing contends that 14 C.F.R. § 13.19 was never adopted in accordance with the notice and comment procedures mandated by the Administrative Procedure Act, 5 U.S.C. § 553 (1982). This argument is without merit, because the FAA in fact promulgated this rule in accordance with the APA. Section 13.19 is a recodification of 14 C.F.R. § 408.25 (1959). 27 Fed.Reg. 9585–92 (1962). The FAA published the new amendments and recodifications as a notice of proposed rule making in the Federal Register on June 14, 1962, 27 Fed.Reg. 5686, and as a Draft Release (No. 62–27) containing a notice of the revision of the FAA's procedural rules. The FAA received and considered public comments on the proposed rules, and discussed the comments in the final publication of the new rules. 27 Fed.Reg. 9585 (Sept. 28, 1962).

▇▇▇ Go Leasing admits that the present rule is a recodification of 14 C.F.R. § 408.25 (1959), and that it was published in 27 Fed.Reg. 9585–92 (1962). Go Leasing argues, however, that neither section 408.-25 nor former Part 408 were ever lawfully adopted pursuant to the APA, 5 U.S.C. § 553. We need not be concerned whether former Part 408 was properly promulgated, for we hold that the subsequent publication of the regulations in the Federal Register served the legal function of notice that is required by the APA. As a noted authority explains:

> Failure to publish a regulation within a prescribed period of time after its adoption will not defeat its effectiveness after adequate notice is effected by subsequent publication.

1A C. Sands, *Sutherland Statutory Construction*, § 31.03 (4th ed. 1984). *See Rowell v. Andrus*, 631 F.2d 699 (10th Cir. 1980) and *Borg-Johnson Electronics, Inc. v. Christenberry*, 169 F.Supp. 746 (S.D.N.Y.1959). In *Rowell*, the Tenth Circuit held that notwithstanding the provisions of the APA that "[t]he required publication ... of a substantive rule shall be made not less than 30 days before its effective date," 5 U.S.C. § 553(d), a regulation published less than thirty days was not void because of the procedural default, but rather became valid after the passage of thirty days. 631 F.2d at 704. In *Borg-Johnson Electronics*, the court held that a party has no cause to complain against the application of rules which had been published forty-four days prior to commencement of the proceedings in which their application was in issue, even though the rules were not published in the Federal Register at least thirty days prior to the date on which they were to become effective. 169 F.Supp. at 752. In this case, the rule was published at least twenty-three years before Go Leasing was charged with its violation. We hold that 14 C.F.R. § 13.19 was validly promulgated under the APA, 5 U.S.C. § 553.

### 5. Internal Agency Policies Under the Administrative Procedure Act

▇▇▇ Go Leasing also argues that the FAA violated the APA by failing to publish five so-called internal enforcement policies which Go Leasing claims are rules. One of Go Leasing's "policy" arguments is patently absurd. Go Leasing complains that it is the FAA's policy to allow the NTSB to

modify the Administrator's complaint and impose a different sanction than that which the FAA sought. The FAA is not in a position to "allow" the NTSB to do anything. The NTSB is an independent agency, Independent Safety Board Act of 1974, 49 U.S.C. §§ 1901–07, with authority to "amend, modify, or reverse the [Administrator's] order if it finds that safety in air commerce or air transportation and the public interest do not require affirmation of the [Administrator's] order." 49 U.S.C. § 1429(a).

■ The remaining "policies" which Go Leasing complains of involve the FAA's selection of enforcement actions. To the extent that the FAA's selection of a particular sanction or remedy reflects agency practices or policies, these policies need not be adopted as rules. "Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule." *SEC v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290–95, 94 S.Ct. 1757, 1769–72, 40 L.Ed.2d 134 (1974) (" 'the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency' ") (quoting *Chenery*, 332 U.S. at 203, 67 S.Ct. at 1580). We hold that the Administrator need not promulgate rules constraining his discretion as to when to employ a particular statutory enforcement action.

### 6. Due Process & FAA Standards and Policies

Go Leasing argues that FAA decisions concerning when to employ certificate action for alleged lack of qualifications on an emergency basis instead of seeking civil money penalty remedies are made on an ad hoc basis in violation of the due process clause of the fifth amendment. The FAA responds that its decisions are necessarily made on a case by case, discretionary basis, taking into account the particular facts and circumstances of each case.

The criteria under which the Administrator takes emergency certificate action are found in the Act. He may suspend or revoke certain certificates when "he determines that safety in air commerce or air transportation and the public interest requires." 49 U.S.C. § 1429(a). This is the same standard that the NTSB and reviewing courts apply to determine whether the FAA's order is warranted. *Id.* Under this standard, the NTSB may affirm, amend, modify, or reverse the Administrator's order. *Id.* In this case, after evidentiary hearings on the record, the ALJ modified and affirmed the FAA's order, and the NTSB affirmed.

In *Holmes*, 705 F.2d at 345–46, we held that the statutory standard was "synonymous with public safety." We further concluded that a "public safety" standard was sufficiently definite to satisfy due process. *Id.* Likewise, in *Reid v. Engen*, 765 F.2d 1457, 1463 (9th Cir.1985), we upheld a similar due process challenge to the Administrator's ex parte sanction procedure. The Administrator suspended a pilot's certificate for 180 days based upon various FAR violations. After an evidentiary hearing, the ALJ upheld some of the charges, dismissed others, and reduced the suspension to 120 days. The NTSB affirmed. In affirming the NTSB, we held that procedural due process requires only adequate notice and an opportunity to be heard, and that the FAA's procedures met these requirements. *Id.*

Go Leasing also asserts that the section 609 emergency power is unconstitutional on its face and as applied because of deficiencies in notice and hearing procedures. Usually, an order of the FAA is stayed pending appeal. Emergency orders are effective immediately and are not stayed pending appeal. 49 U.S.C. § 1429(a). An aggrieved party whose certificate has been revoked under an emergency order has two options to be heard. The first option is to seek an expedited hearing before the NTSB. 49 U.S.C. § 1429(a) (NTSB must expedite and finally dispose of appeal of emergency order within 60 days).

Immediately upon notification by the Administrator to the Board that an emergency exists, the date and place for hearing shall be set upon notice to the parties. The hearing shall be set for a date no later than 7 days after the issuance of the notice of hearing.

49 C.F.R. § 821.56(a). Section 821.54(b) also provides for an effective date of emergency: "the date when the Administrator's written advice of the emergency character of his order has been received by the Office of Administrative Law Judges or by the Board." 49 C.F.R. § 821.54(b). We find this time period to be comparable to the ten-day limitation period permitted for ex parte temporary restraining orders mandated by Fed.R.Civ.P. 65(b).

▮ Alternatively, the aggrieved party may petition for review of an emergency order in this court, even though the party has not exhausted its expedited appeal before the NTSB. *Nevada Airlines, Inc. v. Bond*, 622 F.2d 1017 (9th Cir.1980) (per curiam). In *Nevada Airlines*, an air carrier's operating certificate was revoked in an emergency pursuant to section 609. The carrier appealed the judgment of the district court dismissing its action for injunctive relief against the emergency revocation, and petitioned for review of the emergency revocation order under 49 U.S.C. § 1486(a). We stated that

> [o]ur initial concern is with the reviewability of the emergency revocation order. We distinguish here the Administrator's determination that an emergency warranted immediate effectiveness of the order from his underlying substantive determination that revocation was warranted. Under section 609(a) of the Federal Aviation Act ..., the latter determination may be reviewed by petition to this court after resolution of the administrative appeal pending before the NTSB. Whether the former determination is reviewable now is an issue of first impression.
>
> ....
>
> We are persuaded ... that Nevada Airline's claim for relief is cognizable at

this time, even though administrative remedies remain available to challenge the underlying revocation order.

622 F.2d at 1019; *see also id.* at 1020 n. 4. We further explained that

> [a]lthough the administrative appeal is expedited in these emergency situations, the net effect is suspension without prior notice and hearing for a period of up to 60 days. *See* [49 U.S.C. app. § 1429(a)]. The emergency determination would deprive the certificate holder of a significant property interest and affects substantial rights that might be lost if review is denied or delayed.
>
> This determination could not be insulated from prompt judicial review without raising serious due process concerns.

622 F.2d at 1019–20 (footnote omitted).

▮ Under this authority, we hold that section 609 of the Act, 49 U.S.C. § 1429(a), is not unconstitutional, and that the FAA's procedure does not violate due process.

### 7. Is 14 C.F.R. § 125.11(b) Unconstitutionally Vague?

Title 14 C.F.R. § 125.11(b) provides that "[n]o certificate holder may conduct any operation which results directly or indirectly from any person's holding out to the public to furnish transportation." Go Leasing was charged with violating this provision by indirectly holding out to operate the fifty-seven flights transporting passengers for Club Med without holding an air carrier certificate. Evidence was adduced at the evidentiary hearing that Club Med advertised its vacation packages, including air transportation, to the general public on a nationwide basis. Any member of the public could join Club Med for a nominal fee. Go Leasing complains that the term "holding out" is nowhere defined in the regulations, that the term is unconstitutionally vague, and thus is a violation of due process. Both the ALJ and the NTSB rejected Go Leasing's vagueness argument, holding that the term is clear on its face and gives fair warning to Part 125 certificate holders of the type of conduct the regulation proscribes.

■ A statute is not unconstitutionally vague if it gives fair warning of the proscribed conduct. *Daily v. Bond*, 623 F.2d 624, 626 (9th Cir.1980). The Supreme Court has set out the standards for evaluating a vagueness challenge in great detail:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted), *quoted in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

■ The degree of vagueness that the Constitution tolerates, and the level of judicial scrutiny applied to a vagueness challenge, depend upon the nature of the enactment. *Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193; *Planned Parenthood v. Arizona*, 718 F.2d 938, 948 (9th Cir.1983). The courts are more tolerant of possible vagueness in laws that impose civil rather than criminal penalties, or that do not implicate free speech concerns. *Planned Parenthood*, 718 F.2d at 948. Likewise, the Supreme Court has stated that

> economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Flipside*, 455 U.S. at 498, 102 S.Ct. at 1193 (footnotes omitted); *see also McGowan v.*

*Maryland*, 366 U.S. 420, 428, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961) ("We believe that business people of ordinary intelligence ... would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation...."). Additionally, potential vagueness may be mitigated by judicial or executive interpretation of the challenged provision. *Daily*, 623 F.2d at 626 (case law); *cf. Smith v. Goguen*, 415 U.S. 566, 580 n. 29, 94 S.Ct. 1242, 1251, n. 29, 39 L.Ed.2d 605 (1974) (majority opinion) & 597 (Rehnquist, J., dissenting) (looking to opinions of state attorney general for guidance in determining vagueness of statute).

■ We hold that the term "holding out" is not so vague as to render the regulation unconstitutional. We have stated that "the dominant factor in fixing common carrier status at common law is the presence of a 'holding out' to transport the property or person of any member of the public who might choose to employ the proffered service." *Las Vegas Hacienda, Inc. v. Civil Aeronautics Board*, 298 F.2d 430, 434 (9th Cir.), *cert. denied*, 369 U.S. 885, 82 S.Ct. 1158, 8 L.Ed.2d 286 (1962).

■ Further, if there were any doubt, it is certainly reasonable to expect that Go Leasing would have made efforts to investigate or to inquire with the FAA to determine if its conduct fell outside the bounds of the regulation. We believe that Go Leasing could not have seriously entertained any doubt that its Club Med flights would be viewed as illegal by the FAA, because the FAA issued Advisory Circulars and sent a general information letter to all Part 125 operators specifically defining "holding out" and giving as an example of indirect holding out the very type of conduct that Go Leasing was found to have committed. Additionally, Go Leasing received actual notice from the FAA in February 1985 that the FAA considered the Club Med flights an indirect holding out as a common carrier.

We therefore hold that Go Leasing had fair warning of the proscribed conduct and

that 14 C.F.R. § 125.11(b) is not unconstitutionally vague.

### 8. Additional Arguments

Go Leasing makes two additional arguments under the APA. First, Go Leasing contends that under 5 U.S.C. § 558, there is no grant of jurisdiction or authority for the FAA and the NTSB to impose certificate revocation or suspension as a punitive remedy for violation of safety regulations. As discussed previously, 49 U.S.C. § 1429(a) provides both the jurisdiction and the authority for certificate actions. Second, Go Leasing asserts that the modification violated the APA, 5 U.S.C. § 556(b), because it shows that the ALJ was not impartial. It does not appear that Go Leasing raised this argument before the NTSB, and in any event, there is no indication that the ALJ was not impartial. We hold that these arguments are without merit.

Go Leasing also argues that because the only sanction that the FAA sought was revocation, the ALJ's modification of the emergency order of revocation into a ten-month suspension for punitive purposes violated due process. Go Leasing contends that this section does not give the NTSB the power to "reduce" a revocation order to an order of suspension. Again Go Leasing relies on its argument distinguishing remedial from punitive sanctions. Section 609, 49 U.S.C. § 1429(a) expressly authorizes the NTSB to amend or modify the Administrator's order. This argument is also without merit.

### CONCLUSION.

In summary, we hold that the FAA's emergency order of revocation of Go Leasing's operating certificate was not arbitrary or capricious. Section 609, 49 U.S.C. § 1429(a), is not unconstitutional and authorizes the NTSB to modify the FAA's emergency revocation into a disciplinary suspension for violation of Federal Aviation Regulations, under the standards discussed in this opinion. We further hold that the FAA's challenged regulations were promulgated in accordance with the Administrative Procedure Act, and are constitutional. The decision of the NTSB is AFFIRMED.