56 F.3d 71
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Marco Anthony GRILLO, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation
Administration, Respondents.
 No. 93-70935.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1995.*
Decided May 15, 1995.
 
 1
 Before: HALL and LEAVY, Circuit Judges, and HOGAN, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Marco Anthony Grillo petitions for review of an order of the National Transportation Safety Board ("NTSB") affirming the revocation of his airline transport pilot ("ATP") and certified flight instructor ("CFI") certificates based on his falsification of airman certification records in violation of 14 C.F.R Sec. 61.59(a)(2). The NTSB had jurisdiction to review the Federal Aviation Administration's ("FAA") emergency order of revocation pursuant to 49 U.S.C.App. Sec. 1429(a). We have jurisdiction over petitioner's timely appeal pursuant to 49 U.S.C.App. Sec. 1486(a). We affirm.
 
 I.
 
 4
 Under 49 U.S.C. Sec. 1429(a), any certificate held by an airman may be suspended or revoked "if, as a result of any ... investigation made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest [so] requires." 49 U.S.C. Sec. 1429(a). Grillo admits that he violated section 61.59(a)(2) by falsely reporting that airmen Clument, Judeh and McCutchen failed their flight checks when, in truth, they passed. He explains his conduct as an attempt to achieve what he perceived to be the FAA's "required" failure rate. Grillo argues that the Administrator violated his substantive due process rights by finding that his act of tampering with his pass/fail ratio was detrimental to aviation safety. In Grillo's mind, his falsifications could have had no effect on air safety because Clument, Judeh and McCutchen were fully qualified airmen.
 
 
 5
 In support of his position, Grillo points to the opinion of retired FAA Inspector Stowe who testified that the false failure of qualified airmen had "no impact ... on aviation safety whatsoever." R. at 515. However, the record contains contradictory testimony that the NTSB was entitled to credit. Inspector Swanson opined that Grillo's conduct had an indirect impact on air safety in that it called into question "the integrity of the system." R. at 415.
 
 
 6
 Grillo's argument that the impact of his conduct on air safety should be judged solely by reference to the qualifications of the three airmen ignores the FAA's larger interest in the integrity of its airman certification system. The NTSB has previously emphasized:
 
 
 7
 the need, when determining materiality in a case such as this, to look at the intentionally false entry in the logbook as it relates to the certification framework generally, not just in connection with the application which gave rise to the alleged violation. Viewed in this broader light, any logbook entry which in any way illustrates compliance with any certification or rating requirement ... is material for purposes of a Section 61.59(a)(2) violation. The maintenance of the integrity of the system of qualification for airman certification, which is vital to aviation safety and the public interest, depends directly on the cooperation of the participants and on the reliability and accuracy of the records and documents presented [to the FAA] to demonstrate qualification."
 
 
 8
 Administrator v. Cassis, 4 N.T.S.B. 555, 557, 1982 WL 44941, at * 2-* 3 (N.T.S.B. Sept. 22, 1982), aff'd sub nom. Cassis v. Helms, 737 F.2d 545 (6th Cir. 1984).
 
 
 9
 See also Administrator v. Cranford, 5 N.T.S.B. 343, 1985 WL 71063, at * 4 (same) (N.T.S.B. May 22, 1985); Administrator v. Berry, 1988 WL 250286, at * 6 (N.T.S.B. Mar. 3, 1988) ("[I]n recent years, the Board has held that intentional falsification ... is sufficiently damaging to the airman certification process as to pose a substantial threat to aviation safety and to demonstrate lack of qualifications on the part of the person who falsified ... the application or record."); Twomey v. National Transp. Safety Bd., 821 F.2d 63, 68 (1st Cir. 1987) ("Deliberate falsification, even in relatively small matters, can undermine the effectiveness of the system, with adverse effects on airline safety.")
 
 
 10
 In connection with Grillo's case, the NTSB pointed out that inaccurate record-keeping may prevent the FAA from making a timely discovery of a Designated Pilot Examiner's ("DPE") inadequate testing practices, thus calling into question the qualifications of both the DPEs and the individuals they certificate. Grillo does not dispute that his "false failures" allowed him to avoid stepped up monitoring of his performance as a DPE. Because such avoidance potentially could have thwarted the FAA's important efforts at quality control, we conclude that the NTSB's finding that Grillo's conduct had a negative impact on air safety was supported by substantial evidence. Further, we are persuaded that the NTSB did not violate Grillo's constitutional rights by finding that he compromised air safety. As stated in Borregard v. National Transp. Safety Bd., 46 F.3d 944, 947 (9th Cir. 1995), "the state has broad discretion to regulate professions through the police power, subject only to rational basis review. Because the qualification standards requiring accurate entries in [records] are rationally connected to the public interest in safe air travel, there is no constitutional violation here."[1]
 
 II.
 
 11
 The NTSB held that Grillo lacked the "care, judgment, and responsibility required of the holder of any certificate." Grillo disagrees, contending that the FAA should have suspended, rather than revoked, only the certificate necessary to his service as a DPE -- i.e., the CFI certificate.
 
 
 12
 The plain language of section 1429(a) authorizes the FAA to suspend or revoke "any type certificate" if air safety requires. 49 U.S.C. Sec. 1429(a). In determining whether a particular sanction is appropriate, the relevant inquiry is whether the penalty is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Go Leasing, Inc. v. National Transp. Safety Bd., 800 F.2d 1514, 1518 (9th Cir. 1986). "The arbitrary and capricious standard requires a 'wide deference' be given to an agency's choice of sanctions." Id. (quoting Holmes v. Helms, 705 F.2d 343, 347 (9th Cir. 1983) (per curiam)). However, because the FAA operates under a specific policy of mandating uniformity of sanctions, in deciding whether a particular sanction is arbitrary and capricious this court considers whether the sanction has been imposed in the past for similar violations. Essery v. Dept. of Transp., Nat. Transp. Safety Bd., 857 F.2d 1286, 1291 (9th Cir. 1988). See Department of Transportation FAA Order No. 2150, p 203c.3 ("Each region must make every effort to achieve uniformity of enforcement action. Similar violations under similar circumstances should result in the same type of enforcement action and sanction."). There is ample precedent for revoking both the ATP and CFI certificates.
 
 
 13
 (a) Revocation of uninvolved certificates
 
 
 14
 In support of his argument that only the certificates involved in his offense should be affected, Grillo cites Administrator v. DeRush, 2 N.T.S.B. 144, 1973 WL 18362 (N.T.S.B. Mar. 28, 1973). In DeRush a flight instructor intentionally falsified a student's logbook to reflect that she had received 3.1 hours of instruction when in fact she received significantly less training. On the basis of DeRush's falsification, the student received a commercial pilot certificate. Additionally, DeRush falsified a mandatory entry in his own logbook. The Administrator sanctioned DeRush by revoking both his flight instructor and commercial pilot certificates. The ALJ modified the Administrator's order, affirming only the revocation of DeRush's flight instructor certificate. The NTSB upheld the ALJ on the ground that "revocation of [the CFI] certificate, alone, for the violations involved is in line with sanctions imposed for similar violations." DeRush, 1973 WL 18362, * 3. Based on DeRush, Grillo argues that his sanction should reflect the fact that his falsifications did not lead to the underserved qualification of any airman.
 
 
 15
 There is ample precedent for the revocation of certificates not involved in a respondent's violation even in cases where the false information did not facilitate the certification of an unqualified airman. In Administrator v. Schlagenhauf, 1992 WL 155858 (N.T.S.B. June 25, 1992), the respondent gave a number of students flight instruction even though his CFI certificate had expired. He made notations in their logbooks, falsely indicating that he held a CFI certificate. The NTSB upheld the FAA's order revoking not only the respondent's CFI certificate, but also his ATP and mechanic certificates. Respondent argued that the sanction was inappropriate in that his falsifications did not result in the students' qualification for the next level of proficiency. The NTSB rejected this argument, stating that regardless of whether the students would ever have used the hours of instruction "to show compliance with any requirement for the issuance ... [of] any certificate or rating," section 61.59(a)(2) reaches the mere "placement [of false information] in a 'logbook, record, or report' that might be tendered to demonstrate compliance with specified requirements." Schlagenhauf, 1992 WL 155858, at * 3. In the case at bar, there is no dispute that Grillo placed false information into records used by the examinees to show that they had completed their mandatory flight checks.
 
 
 16
 Further, in Administrator v. Mason, 1992 WL 40524 (N.T.S.B. Jan. 22, 1992), the NTSB made clear that the court's proper focus is on the respondent's qualifications, not on the qualifications of those he tests. "[W]e reject respondent's arguments that the airmen's actual proficiency ... is relevant as to the sanction assessed for respondent's violation. It does not matter if they are actually competent to perform VOR approaches, or if respondent could "trust them" to do so.... Our focus is on respondent's qualifications to hold an airman certificate, not theirs, and our conclusion is that because respondent could not truthfully and accurately prepare the forms, the aviation system can no longer trust him to properly exercise the privileges of his airman certification." Mason, 1992 WL 40524, at * 2 (emphasis added).
 
 
 17
 (b) Revocation vs. suspension
 
 
 18
 Although the NTSB has upheld suspension in cases of intentional falsification where there are mitigating circumstances, revocation has more often been affirmed in cases of intentional falsification. See Administrator v. Strever, 1974 WL 19269, at * 2 (N.T.S.B. June 27, 1974) (reducing sanction of revocation to suspension for intentionally false entries in student logbook used to show completion of certificate and rating requirements where respondent demonstrated "compliance disposition" by returning cost of instruction to student and providing free instruction); Administrator v. Fallon, 1988 WL 250294 (N.T.S.B. Feb. 17, 1988) (disclosure of falsified entries prior to discovery by FAA may be considered in mitigation).
 
 
 19
 Here, the record does not reveal, and Grillo does not point to, any valid mitigating circumstances to justify a reduction of his sanction. Moreover, NTSB caselaw supports revocation rather than suspension of Grillo's certificates. See Mason, 1992 WL 40524, at * 2. The NTSB has noted that "in recent years, the Board has held that intentional falsification ... is sufficiently damaging to the airman certification process as to pose a substantial threat to aviation safety and to demonstrate lack of qualifications on the part of the person who falsified ... the application or record." Administrator v. Berry, 1988 WL 250286, at * 6 (N.T.S.B. Mar. 3, 1988). See also Administrator v. Tur, 1991 WL 321357, at * 3 (N.T.S.B. Dec. 13, 1991) ("The issue of qualification embraces more than an airman's technical skills; it involves also his willingness or capacity to conform his conduct to all applicable legal requirements.") Although Grillo's penalty is undoubtedly harsh, it is supported by precedent and th us was not an arbitrary and capricious abuse of the NTSB's broad discretion. A reviewing court "cannot reverse the agency decision simply because it might believe that the public interest could best be served by a different decision." Go Leasing, 800 F.2d at 1518-19.
 
 III.
 
 20
 Grillo next contends that the Administrator had an unconstitutional policy of mandating the revocation of all airman certificates in falsification cases without first considering the possibility of suspension. In support of his argument, Grillo relies on the fact that the FAA's Enforcement Sanction Guidance Table recommends revocation in intentional falsification cases. Department of Transportation FAA Order 2150.3A, Appendix 4. The preamble to the Table specifically states, however, that the purpose of the sanction recommendations "is to assist, not replace, the exercise of prosecutorial judgment." Id. The preamble also makes clear that the Table "is sufficiently broad and flexible to permit full consideration of all mitigating and aggravating factors." Id.
 
 
 21
 As evidence of the FAA's alleged policy of mandatory revocation, Grillo points to Inspector Swanson's testimony with respect to the wording of the handbook. Aside from the text of the handbook itself, Grillo points to no evidence that the Administrator mechanically applies sanctions based on the handbook's recommendations without regard to the individual facts of a case. Thus, his claim that the Administrator violated his due process rights by failing to exercise prosecutorial discretion must fail.
 
 
 22
 PETITION DENIED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 The Honorable Michael R. Hogan, Chief United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Grillo also advances two other arguments, neither of which is persuasive. First, he argues, and cites several cases for the proposition, that his falsifications were not so egregious as to warrant a finding that he lacks good moral character. The NTSB expressly declined to consider whether Grillo's conduct demonstrated a lack of moral character, finding that revocation of his certificates was wholly justified by his violation of section 61.59(a)(2)
 Second, in its order upholding the Administrator's sanction, the NTSB noted that "trustworthiness is as much a component of air safety as is ... technical competence." Grillo argues the NTSB's reliance on the "trustworthiness" standard violated his right to substantive due process because he had no notice that he would be judged on the basis of this trait. Contrary to Grillo's suggestion, the NTSB has long considered trustworthiness as a factor relevant to an airman's qualifications. See Olsen, 14 F.3d at 476 (quoting Administrator v. Guerin, 1993 WL 87670 (N.T.S.B. Mar. 12, 1993)) ("[T]he issue here is trust .... [A]n individual who does not ensure the scrupulous accuracy of his representations in records on which air safety critically depends cannot be said to possess the necessary care, judgment, and responsibility required of a mechanic."); Administrator v. McCarthney, 1990 WL 339193 (N.T.S.B. Dec. 28, 1990) (air safety closely linked to both degree of skill and competence airmen possess as well as to their trustworthiness); Administrator v. Rice, 5 N.T.S.B. 2285 (1987), 1987 WL 122133 (N.T.S.B. Sept. 16, 1987) (falsification of logbook incompatible with position of public trust occupied by inspection authorization holder).