John L. **HAINES**, Petitioner,

v.

**DEPARTMENT OF TRANSPORTATION**
**et al., Respondents.**

No. 24258.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 4, 1971.

Decided Sept. 21, 1971.

---

Mr. Arthur Horowitz, Washington, D. C., of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Gary Green, Washington, D. C., was on the brief, for petitioner.

Mr. Walter H. Fleischer, Atty., Department of Justice, for respondents, Messrs. Thomas A. Flannery, U. S. Atty., Robert V. Zener and Alexander P. Humphrey, Attys., Department of Justice, were on the brief, for respondents.

Before LEVENTHAL, ROBB and WILKEY, Circuit Judges.

ROBB, Circuit Judge:

This is a petition for review of an order of the National Transportation Safety Board [1] (the Board). The challenged order upheld a decision of the Administrator of the Federal Aviation Administration [2] (the Administrator) suspending the Airman Certificate of petitioner John L. Haines, a pilot for Braniff Airways.[3]

Mr. Haines was the copilot at the controls of Braniff Flight 979 between Asuncion, Paraguay and Buenos Aires, Argentina on June 6, 1968. After take-

---

1. This court has jurisdiction under the Department of Transportation Act § 4(c), 49 U.S.C. § 1653(c) (Supp. V, 1970), incorporating the Federal Aviation Act of 1958 §§ 609, 1006(a), 49 U.S.C. §§ 1429, 1486(a) (1964).

2. The power of suspension, formerly vested in the Administrator of the Federal Avia-

tion Agency, was transferred to the Administrator of the Federal Aviation Administration by the Department of Transportation Act § 6(c) (1), 49 U.S.C. § 1655(c) (1) (Supp. V, 1970).

3. The Board order is designated Order No. EA–153 (March 12, 1970).

off, Flight 979 received radio instructions to cross a navigation directional beacon designated as "San Antonio" at 20,000 feet and to descend to 15,000 feet at a later point called the "Mercedes" intersection. After crossing the San Antonio beacon at the prescribed altitude of 20,000 feet, pilot Haines descended below 15,000 feet and crossed the Mercedes intersection at an altitude of 13,500 feet. For thus flying at 1,500 feet below the prescribed altitude at the Mercedes intersection, Braniff grounded Mr. Haines for the two-week period from June 13 through June 26, 1968. The Administrator also suspended him for a two-week period, such suspension to run concurrently with the airline's grounding. The Administrator's action was based on section 121.535(f) of the Federal Aviation Regulations, which provides that "[n]o pilot may operate an aircraft in a careless or reckless manner so as to endanger life or property."

Pilot Haines appealed the ruling of the Administrator,[4] claiming that it was not supported by substantial evidence, that under the applicable regulation[5] the Administrator had the burden of establishing a violation of foreign law or regulations governing aircraft altitudes, and that the standard of carelessness and danger to life or property which was applied in the case was improper. On appeal the examiner reversed the Administrator's decision, and the Board in turn reversed the examiner and upheld the Administrator's initial suspension order. Mr. Haines now seeks reversal of the Board's decision, on the grounds urged before the examiner and the Board.

The Board found that Mr. Haines was flying at 1,500 feet below the prescribed 15,000 foot altitude when he passed the Mercedes intersection, that the day was clear and visibility was good, that the air traffic was sparse, and that no other aircraft was shown to have been endangered by Flight 979.[6] Although some of these findings were disputed, the Board's factual determinations were based on substantial evidence and are therefore conclusive upon us. *See* 49 U. S.C. § 1655(h) (Supp. V, 1970); 5 U.S. C. § 706 (1970); 49 U.S.C. § 1653(c) (Supp. V, 1970); 49 U.S.C. § 1486(e) (1964); *Doe v. Department of Transportation, Federal Aviation Administration,* 412 F.2d 674, 677 (8th Cir. 1969).

The petitioner argues that the Board's findings of fact, even if accepted, do not support its order. First, he claims that the government failed to establish a violation of the law or regulations of Argentina and that such a violation is a necessary element of the offense charged. Second, he contends that the Board's conclusion, that his conduct endangered life or property, was unwarranted and unsupported by the record.

It is clear from 14 C.F.R. § 91.-1(b) (1971)[7] that a pilot in control of a flight within a foreign country is required to abide by the regulations relating to the flight and maneuver of aircraft in that country—Argentina in this case. It is also plain that any such regulations, if produced, might be relevant here. 49 U.S.C. § 1502 (1964).[8] The alleged violation in this case, however, was of a regulation of the United States, and the standards and purposes of that regulation warranted suspension on the

---

4. The appeal was taken pursuant to 49 U.S.C. § 1654(b) (2) (Supp. V, 1970).

5. 14 C.F.R. § 91.1(b) (1971), which provides that:

   (b) Each person operating a civil aircraft of U. S. registry outside of the United States shall—

   *   *   *   *   *

   (2) When within a foreign country, comply with the regulations relating to the flight and maneuver of aircraft there in force. * * *

6. The Board accepted the examiner's factual findings as its own. National Transportation Safety Board Order No. EA–153 (March 12, 1970).

7. *See* note 5 *supra* for the text of the regulation.

8. 49 U.S.C. § 1502 (1964) provides that:
   In exercising and performing their powers and duties under this chapter, the Board * * * shall take into consideration any applicable laws and requirements of foreign countries. * *

basis of that violation. *See* Pangburn v. C. A. B., 311 F.2d 349, 354 (1st Cir. 1962). When the government made a prima facie showing that its regulation had been violated by an inherently dangerous course of conduct, the burden was on the pilot in his defense to establish any Argentine law or regulations which might have exculpated him.[9] No such foreign law or regulation having been presented by the pilot, the Board properly based its action on his violation of the United States regulation.

■■ The Board was warranted in concluding that the likelihood of danger appearing from the facts justified a finding of a violation of 14 C.F.R. § 121.535(f) (1971). The regulation, which provides that "[n]o pilot may operate an aircraft in a careless or reckless manner so as to endanger life or property," is designed to promote safety and uniformity in commercial flight and to induce compliance with traffic controls. *See* Doe v. Department of Transportation, Federal Aviation Administration, 412 F.2d 674, 677 (8th Cir. 1969); Pangburn v. C.A.B., 311 F.2d 349, 354 (1st Cir. 1962); Nadiak v. C.A.B., 305 F.2d 588, 590–591 n. 1 (5th Cir. 1962). The regulation is in general terms, for a pilot must have discretion to exercise judgment in the interests of safety and comfort. Those factors which might warrant a departure from flight instructions or custom, however, are particularly within the realm of the pilot's knowledge, and it is his burden to establish that conditions required such departure. *See* Specht v. C.A.B., 254 F.2d 905, 915 (8th Cir. 1958). Here the pilot was flying below the prescribed altitude, a practice which the Board reasonably found presented a potential danger to the passengers and the airplane, and the pilot failed to justify his deviation from instructions.

■ That no other aircraft was sighted in the vicinity of Flight 979 provides no justification for the pilot's maneuver; rather it invites only speculation that no danger was presented. What is more important is that, in the judgment of the Board, potential danger was unnecessarily presented, and this is sufficient to support a finding that the regulation was violated. *E. g.,* Administrator v. Jarrendt, 32 C.A.B. 1377 (1960); Lee Rogers, 31 C.A.B. 1135 (1960). Proof of actual danger is unnecessary, for the regulation prohibits any careless or reckless practice in which danger is inherent.[10] That danger was inherent in the pilot's conduct —that danger might have developed in the ordinary course of events—is a matter for the Board's determination in the reasonable exercise of its expert judgment. United States v. Great Northern Ry. Co., 337 F.2d 243, 247 (8th Cir. 1964); Nadiak v. C.A.B., 305 F.2d 588, 593 (5th Cir. 1962). We see no reason to disturb the Board's finding in this respect. Nor will we disturb the Board's determination of the degree of danger necessary to establish a violation of the regulation. We think that determination was reasonable and consistent with the wording of the regulation. *See* Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The policy of the regulation would be subverted if its enforcement turned on a *post facto* view of the degree of danger presented. The regulation is intended to prevent inherently dangerous practices, and it is no defense that by happenstance and in retrospect no actual danger appears. *See* Administrator v. Jarrendt, 32 C.A.B. 1377, 1396 (1960).

Accordingly, the order of the Board suspending pilot Haines' certificate for the period stated is

Affirmed.

9. Control zone violations have often been regarded by the Board as inherently dangerous and serious offenses under air safety regulations. *E. g.,* Lee Rogers, 31 C.A.B. 1135 (1960); Miles S. Firnhaber, 30 C.A.B. 1599 (1959); Thaddeus Lewis Woltanski, 28 C.A.B. 1045 (1959).

10. The wording of the regulation does not support a requirement of actual danger. Instead it prohibits the "[operation of] an aircraft in a careless * * * manner *so as to* endanger life or property." 14 C.F.R. § 121.535(f) (1971) (emphasis added).