**William G. DILLEY, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFE-
TY BOARD and Administrator, Federal
Aviation Administration, Respondents.**

No. 93–9570.

United States Court of Appeals,
Tenth Circuit.

March 6, 1995.

Lawrence B. Smith, Tucson, AZ, for plaintiff-appellant.

Robert P. Vente (Harry S. Gold and Peter J. Lynch with him, on the brief), Federal Aviation Administration, Washington, DC, for respondents.

Before ANDERSON, REAVLEY,* and HENRY, Circuit Judges.

HENRY, Circuit Judge.

Petitioner, William S. Dilley, appeals the suspension of his commercial pilot certificate by the Federal Aviation Administration (FAA)[1] for violation of certain FAA regulations. Mr. Dilley is strenuously represented by attorney Lawrence B. Smith, who is singularly engaged in a quixotic quest to deny

---

* The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. The National Transportation Safety Board (NTSB) and the Administrator of the FAA, an agency within the Department of Transportation, are both respondents in this case. *See* 49 U.S.C. app. § 1429(a) ("The Administrator shall be a party to all proceedings for judicial review under this subsection."); 49 U.S.C. § 106(g) ("The Administrator shall carry out [the] duties and powers of the Secretary of Transportation ... related to aviation safety...."); Fed.R.App.P. 15(a) ("In each [petition for review of an administrative order] the agency must be named respondent."). The Board performed a quasi-judicial function in

this case. The FAA Administrator, however, is the real party in interest, inasmuch as it is the enforcement of his order of suspension that petitioner challenges.

In 1966, all functions, powers, and duties of the FAA and of the Administrator, and all functions, powers, and duties of the Civil Aeronautics Board, were transferred to the Secretary of Transportation by Pub.L. No. 89–670, 80 Stat. 931 (1960). The powers, functions, and duties transferred from the FAA pertaining to aviation safety are to be exercised by the FAA administrator in the Department of Transportation and the powers, functions, and duties transferred from the Civil Aeronautics Board are to be exercised by the NTSB. *See* 49 U.S.C. app. § 1655(c)-(d).

the authority of the FAA to issue such suspensions.[2]

In this case, Mr. Smith argues that the FAA's claim of authority to suspend or revoke a pilot's license is based on an interpretation of the Federal Aviation Act of 1958, § 609 (codified as amended at 49 U.S.C. app. § 1429(a)) that has not been published in the Federal Register, as required by 5 U.S.C. § 552(a)(1)(D), part of the Administrative Procedure Act (APA)[3]. He maintains that the FAA's failure to publish its interpretation of Section 609 compels this court to vacate the order suspending Mr. Dilley's pilot certificate.

We have jurisdiction under 49 U.S.C. app. § 1486(a) and AFFIRM the order of the NTSB.

## I. Authority to Suspend Pilot Certificates

We begin our analysis by examining the FAA's authority to suspend pilot certificates. The applicable Federal Aviation Act provision, 49 U.S.C. app. § 1429(a), states in pertinent part:

> The Secretary of Transportation may, from time to time, reinspect any civil aircraft, aircraft engine, propeller, appliance, air navigation facility, or air agency, or may reexamine any civil airman. If, as a result of any such reinspection or reexamination, or if, as a result of any other investigation made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires, the Secretary of Transportation may issue an order amending, modifying, suspending, or revoking, in whole or in part, any type certificate, production certificate, airworthiness certificate, airman certificate, air carrier operating certificate, air navigation facility

certificate (including airport operating certificate), or air agency certificate.

The Federal Aviation Act is one of the broadest grants of power given by Congress to a federal agency. The statute broadly grants authority, upon *inspection, examination, or investigation,* for the Secretary to suspend certificates whenever safety or the public interest requires. Congress obviously believed that the safety and protection of Americans required stringent regulation to preserve the "public right of freedom of transit through the navigable airspace of the United States." 49 U.S.C. app. § 1304.

The Federal Aviation Act clearly grants broad disciplinary powers to the agency, which have been sustained by numerous cases. For example, in *Pangburn v. Civil Aeronautics Bd.,* 311 F.2d 349 (1st Cir.1962), the First Circuit held that the Civil Aeronautics Board had the power to suspend a certificate as a sanction under § 1429(a):

> The Board takes the position that quite apart from the qualifications or competency of a pilot, it has the right under [§ 1429] to impose a suspension as a "sanction" against specific conduct or because of its "deterrence" value—either to the subject offender or to others similarly situated. In short, the Board contends that it may order suspension for disciplinary purposes. We agree with the Board.

Under the provisions of the 1938 Act suspensions were frequently imposed as a deterrent sanction notwithstanding the apparent technical qualifications of the pilot. The imposition of a suspension as a sanction was challenged under the 1938 Act in *Wilson v. Civil Aeronautics Board,* 100 U.S.App.D.C. 325, 244 F.2d 773 (1957), *cert. den.,* 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75. In that case the petitioner argued that a suspension order could only

**2.** Because of the deep personal involvement of Mr. Smith in this case and its related cases, an involvement he characterizes as "public interest work," we shall refer to him rather than Mr. Dilley in this and related appeals.

**3.** Section 552 provides:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

. . . .

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.

5 U.S.C. 552 et seq.

be issued under [§ 1429] where there was a demonstration of a lack of technical qualification and that absent such a finding, the Board could only impose a monetary penalty under Section 901 (49 U.S.C. § 621). The Court of Appeals for the District of Columbia rejected these contentions. Relying on the consistent administrative practice of over 4,000 such suspensions during the course of administering the Act, the broad discretionary authority which the statute vested in the Board, and a clear recognition of the valuable deterrent effect of such suspensions, the court held that the administrative practice should be sustained for "the most cogent of reasons—air safety." In sum, the court held that the Board could impose suspensions, as a deterrent sanction, "in the interest of the public," because a vital "public interest" was "air safety."

*Pangburn,* 311 F.2d at 354 (quoting *Wilson v. Civil Aeronautics Bd.,* 244 F.2d 773 (D.C.Cir.), *cert. denied,* 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75 (1957)).

This court cited *Pangburn* and some of its progeny in a case directly on point, *Hill v. National Transp. Safety Bd.,* 886 F.2d 1275 (10th Cir.1989). In that case we noted:

Hill contends that the FAA lacks authority under [§ 1429] to suspend his pilot certificate for violations of [Federal Aviation Regulations]. Hill bases his argument, in part, on the fact that [§ 1429] does not contain a reference to regulatory violations as a predicate to pilot suspension. Alternatively, section 901 [of the Federal Aviation Act] specifically authorizes monetary sanctions for [Federal Aviation Regulation] violations. Hill concludes that [§ 1429] therefore allows suspension only when pilot qualifications are at issue and that the only proper recourse against him is a civil penalty under section 901. We disagree.

Hill's position is unfounded and has been squarely rejected by other circuits. Although [§ 1429] does refer to the authority to "reexamine any civil airman," the stat-

ute is plainly not restricted to pilot qualifications. The Act gives the FAA broad discretion to suspend a pilot certificate as a result of re-examination of a civil airman, "or if, as a result of *any other investigation* made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires."

*Id.* at 1281 (footnotes and citations omitted).

*Hill* continues, quoting *Go Leasing, Inc. v. National Transp. Safety Bd.,* 800 F.2d 1514 (9th Cir.1986):

"Agencies charged with a prosecutorial function must have flexibility in confronting the varieties of facts presented in particular cases. There is no question that the [FAA] Administrator has the legal discretion to choose between employing [§ 1429] certificate action and section 901 civil money penalty remedies."

*Hill,* 886 F.2d at 1281 (quoting *Go Leasing,* 800 F.2d at 1518 (citation omitted)) (first alteration in original).

Although Mr. Smith has refused to heed these cases, we again hold that the Secretary of Transportation may modify, suspend, or revoke an airman's certificate for disciplinary purposes. We restate our holding in *Hill* that "[t]he Act gives the FAA broad discretion to suspend a pilot certificate as a result of re-examination of a civil airman, 'or if, as a result of *any other investigation* made by the Secretary of Transportation, he determines that safety in air commerce or air transportation and the public interest requires.'" *Id.* (emphasis in original).[4]

## II. *Publication of a Policy Regarding the FAA's Authority to Suspend Pilot Certificates is not Required*

Noting that § 1429(a) authorizes the suspension of pilot certificates for disciplinary purposes, several other circuits have held that the APA does not require the FAA to promulgate rules or to publish a policy explaining that it asserts this statutory authori-

---

4. It may be that every court that has construed this statute is wrong. However, in our form of government, *they get to be.* Mr. Smith's remedy, which he admits having tried and failed to ac-

complish, is to get Congress to amend the statute. Congress's lack of action on this point merely confirms the courts' readings of § 1429(a).

ty.[5] *See Rochna v. National Transp. Safety Bd.*, 929 F.2d 13, 15–16 (1st Cir.) (noting that "the need to apply the rule-making procedures of the APA, 5 U.S.C. §§ 552(a)(1) and 553, in airman certificate suspension cases has, since *Pangburn*, consistently been answered in the negative across the circuits"), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); *Tearney v. National Transp. Safety Bd.*, 868 F.2d 1451, 1454 (5th Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989); *Komjathy v. National Transp. Safety Bd.*, 832 F.2d 1294, 1296 (D.C.Cir.1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988). These courts reason that the clear statutory grant of authority renders promulgation and publication of a rule or a policy unnecessary. *Id.* Mr. Smith represented the petitioners in each of these cases.

 We agree with the First, Fifth, and District of Columbia Circuits and hold that the APA does not require the FAA to promulgate a rule or publish a policy stating that it may suspend pilot certificates for violations of Federal Aviation Regulations.[6] The statute is clear and its long-standing construction is even clearer.

### III. Admonition

Over the years, Mr. Smith has brought numerous cases challenging the FAA's authority in certificate suspension actions, losing all of them with the possible exception of *Mace v. Skinner*, 34 F.3d 854 (9th Cir.1994), in which he filed an action for damages against FAA officials pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[7] We admonish Mr. Smith that his theory of the inadequacy of § 1429(a) for airmen's certificate suspensions and his argument that publication is required under the APA to remedy his perceived deficiencies in the statute have been clearly rejected by this circuit as well as many others.

Further litigation on these or related theories may subject Mr. Smith to possible sanctions.

### IV. Conclusion

Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.

---

5. At oral argument, Mr. Smith maintained that no court has ruled on this subject.

6. We have noted that "the courts have consistently required that agencies publish their rules and policy statements only if they constitute a change from existing law, policy or practice." *Knutzen v. Eben Ezer Lutheran Housing Ctr.*, 815 F.2d 1343, 1351 (10th Cir.1987) (collecting cases).

7. In *Mace*, the Ninth Circuit vacated a district court dismissal order in a *Bivens*-type action challenging conduct of FAA, NTSB, and Department of Transportation officials involved in the official suspension of his aircraft mechanic's certificate. The district court had held that it lacked subject matter jurisdiction over the *Bivens*-type complaint. The court concluded:

> In reaching this conclusion, however, we do not mean to imply that Mace's complaint may not be subject to dismissal under Fed.R.Civ.P. 12(b)(6), nor that, after development of the

record, it may not be a candidate for summary judgment under Fed.R.Civ.P. 56(c). *Mace,* 34 F.3d at 860. The court further noted: Although we decline to go beyond the initial jurisdictional question in this opinion, we note that the Defendants vigorously asserted, both below and on appeal, three alternative bases for dismissing Mace's complaint: First, that the FAA's comprehensive remedial scheme constitutes special factors counselling hesitation against creating a *Bivens*-the remedy in the context of FAA license revocation procedures; second, that the complaint failed to state a claim under the Constitution; and third, that the Defendants are protected from suit by the doctrines of absolute and/or qualified immunity. Because the district court dismissed Mace's complaint with prejudice and without ruling on these arguments in the context of a (possible) amended complaint, we elect not to reach the merits of the Defendants' alternative arguments here. *Id.* at n. 6 (citations omitted).