U.S. v. Emerson                          CV-94-152-JD   03/29/96
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


United States of America

      v.                                Civil No. 94-152-JD

Alan D. Emerson, et al.


                              O R D E R


      The plaintiff, the United States of America, has brought

this action against the defendants, Alan Emerson d/b/a/ Emerson

Aviation ("Emerson Aviation") and Alan Emerson, individually, to

recover a civil penalty for past violations of federal aviation

law and to permanently enjoin future violations.  Before the

court is the defendants' second motion to dismiss (document no.

55) on the ground that the instant civil prosecution violates the

Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution.



                             Discussion

      The court has recited the facts underlying this action in

prior orders, e.g., United States v. Emerson, No. 94-152-JD, slip

op. (D.N.H. March 29, 1995) (denying first motion to dismiss),

and need not repeat the recitations here.  Those facts directly

relevant to the instant motion will be incorporated infra.

      The defendants have filed an answer to the government's

complaint and, as such, the pleadings have closed within the meaning of Rule 7(a). Accordingly, the court will treat the motion to dismiss as a motion for judgment on the pleadings under Rule 12(c).

A motion for judgment on the pleadings will be granted if, accepting all of the plaintiff's factual averments contained in the complaint as true, and drawing every reasonable inference helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988); see Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986) (standard for evaluating Rule 12(c) motion is essentially the same as the standard for evaluating motion under Rule 12(b)(6)). The court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether it is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

The instant motion requires the court to revisit the defendants' double jeopardy argument, initially rejected approximately one year ago, in light of cases recently decided by the First and other circuits.

2

The defendants argue that the prior enforcement actions of the Federal Aviation Administration ("FAA"), which include the revocation of various certificates, constitute punishment for double jeopardy purposes and, thus, constitutionally bar the instant civil prosecution. Defendants' Memorandum in Support of Second Motion to Dismiss ("Defendants' Memorandum) at 7 (citing United States v. 9844 South Titan Court, Unit 9, Littleton, Colorado, 75 F.3d 1470 (10th Cir. 1996); United States v. Perez, 70 F.3d 345 (5th Cir. 1995); United States v. Ursery, 59 F.3d 568 (6th Cir. 1995), cert. granted, 116 S. Ct. 762 (1996); United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994) cert. granted, 116 S. Ct. 762 (1996)). The government responds, inter alia, that the prior FAA actions were remedial rather than punitive, that the recent decisions cited by the defendants are factually inapposite, and that the defendants' double jeopardy argument is foreclosed by the First Circuit's recent decision in United States v. Stoller, ___ F.3d ___, 1996 WL 77883 (1st Cir. Feb. 29, 1996)).

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). In recent

3

years federal courts have refined their application of the clause, in part because of an apparent increase in the number and variety of cases in which the government has initiated civil forfeiture actions against criminal defendants. Last month, the First Circuit surveyed the Supreme Court's double jeopardy decisions and outlined a case-specific analysis for those double jeopardy challenges <u>not</u> based on "fines, forfeitures, and other monetary penalties designed to make the sovereign whole for harm or loss that is quantifiable in . . . monetary terms." <u>Stoller</u>, 1996 WL 77883 at * 3-8 (citing <u>Department of Revenue v. Kurth Ranch</u>, 114 S. Ct. 1937 (1994); <u>Austin v. United States</u>, 113 S. Ct. 2801 (1993); <u>Halper</u>, 490 U.S. 435 (1989)). The <u>Stoller</u> analysis guides the court's consideration of the instant motion because the FAA's prior enforcement actions did not call for a monetary penalty.

In <u>Stoller</u>, the First Circuit concluded that an administrative sanction of debarment imposed by the Federal Deposit Insurance Corporation ("FDIC") against a former bank president for insider lending practices did not constitute "punishment" such as to bar a subsequent federal criminal prosecution based on the same unlawful conduct. 1996 WL 77883 at * 13. The court's finding that debarment was a remedial sanction for double jeopardy purposes followed a totality of the

4

circumstances assessment inspired by <u>Kurth Ranch</u>, 114 S. Ct. at 1946-47.

> We conduct our inquiry by considering the totality of the circumstances, including the source of the authority under which the debarment is imposable, the goals underpinning the authorizing statute, the order itself, the purposes it serves, and the circumstances attendant to its promulgation.  In the course of this tamisage, we give weight to a variety of factors such as the severity of the civil sanction; its relationship to legitimate, non-punitive aims; the extent to which the legislature acted to deter potential wrongdoers, or conversely, to shield the public; and the nexus (if any) between the civil sanction and the crime that it allegedly punishes.

<u>Id.</u> at * 9 (internal citation omitted).

No one factor, standing alone, controls the court's determination of whether a sanction is remedial and punitive, <u>id.</u> at * 9, and the fact that a sanction may also yield punitive consequences does not necessarily trigger double jeopardy because "a civil sanction need not be solely remedial to pass constitutional muster," <u>id.</u> at * 12 (citing <u>United States v. Hernandez-Fundora</u>, 58 F.3d 802, 806 (2d Cir.), <u>cert.</u> <u>denied</u>, 115 S. Ct. 2288 (1995); <u>Bae v. Shalala</u>, 44 F.3d 489, 493 (7th Cir. 1995)).  Finally, the First Circuit has ruled that the characterization of a sanction as remedial is favored where the government's "authority [to sanction] is not tied to a finding

5

that the targeted individual has committed a crime." Id. at *
9.[1]

The court finds that the FAA's prior enforcement actions do
not constitute punishment for double jeopardy purposes.  First,
the federal aviation laws, including those delegating authority
to the FAA, are principally designed to promote air safety rather
than to criminalize a given type of conduct, e.g., drug use or
money laundering.  This legislative intent is readily apparent
from the statutory language, which places heavy emphasis on

> **(a) Promoting safety.** -- The Administrator of the
> [FAA] shall promote safe flight of civil aircraft in
> air commerce by prescribing [minimum standards for
> aircraft specifications, maintenance, classifications,
> etc.].

49 U.S.C.A. § 44701(a) (West Supp. 1995); see § 44702(b) (FAA
shall consider "duty of air carrier to provide service with the
highest degree of safety in the public interest" when issuing
certificates for airmen, air carriers, and airports); § 44703(b)

---

[1]The Stoller Court explained that

> [j]ust as the presence of an explicit link between a
> civil penalty and the commission of a crime makes it
> more likely that the penalty will be deemed punitive
> for double jeopardy purposes, see Kurth Ranch, 114 S.
> Ct. at 1947, so, too, the fact that a civil penalty can
> be imposed whether or not the targeted individual has
> committed a crime makes it more likely that the penalty
> will be deemed remedial, see, e.g., Thomas v.
> Commissioner, 62 F.3d 97, 101 (4th Cir. 1995).

Id. at * 9.

6

(airman certificate shall contain terms "necessary to ensure safety in air commerce"); see also Pangburn v. Civil Aeronautics Bd., 311 F.2d 349, 355 (1st Cir. 1962) ("One of the dominant motives of Congress in passing the 1958 [Federal Aviation] Act was to 'insure the maximum possible safety and efficiency under proper regulations, impartially enforced.'"). Moreover, Congress expressly authorized the FAA to amend, modify, suspend, or revoke any certificate, including those awarded to pilots, such as Alan Emerson, or carriers, such as Emerson Aviation, if

> the Administrator decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require [such] action.

49 U.S.C.A. § 44709(b); see also Hill v. National Transp. Safety Bd., 886 F.2d 1275, 1279 (10th Cir. 1989) (noting that FAA's authority to revoke or modify an aviation certificate "further contributes to the promotion of air safety"). Thus, the federal aviation laws, in general, and the laws and regulations governing pilot and carrier certification and decertification, in particular, were promulgated to promote the distinctly remedial goal of reducing the risks associated with air transportation and commerce.

Second, the FAA's prior enforcement action in this case is appropriately tailored to the remedial goals of the federal aviation laws. It is undisputed that the FAA investigated the

7

defendants and, in turn, identified a variety of unsafe practices that did not conform to applicable law and regulation. The FAA logically responded to these public safety concerns by limiting the defendants' flying privileges and, as a result, preventing the defendants from continuing their pattern of noncompliance. See Pangburn, 311 F.2d at 355 (upholding administrative suspension of pilot license, First Circuit noted that "[s]urely it cannot be gainsaid that the [government's] power to impose a suspension on an errant pilot in an appropriate case will go far 'to insure the maximum possible safety'"). In addition, the defendants were not subject to a monetary fine which, in some instances, would suggest a punitive goal.[2]

Third, the FAA's authority to revoke the certificates was not expressly or impliedly tied to a finding that the defendants had committed a crime. This further supports the government's position that its prior enforcement activities were principally designed to remedy a threat to aviation safety and did not operate as punishment or retribution for the commission of a crime.

_____

[2]The court recognizes that the FAA's actions may have carried a punitive sting to the extent the defendants suffered financial loss from the restrictions placed on their flying activities. However, such economic consequences are secondary to the remedial purpose and design of the sanction and do not transform the sanction into a punishment for double jeopardy purposes. See Stoller, 1996 WL 77883 at * 12.

8

Fourth, the characterization of the FAA's enforcement activities as remedial harmonizes with last week's decision of <u>Allen v. Attorney General of Maine</u>, in which the First Circuit held that the administrative revocation of the driver's license held by an individual arrested for drunk driving did not constitutionally bar a subsequent criminal prosecution for the same conduct. ___ F.3d ___, No. 95-2057, slip op. at 18 (1st Cir. March 26, 1996). The court, applying its newly minted <u>Stoller</u> analysis, found that the license revocation "represents a reasonable effort to protect the public from motorists who have demonstrated a dangerous propensity to drink before they drive." <u>Id.</u> The safety concerns underlying federal aviation laws, no less than those which give rise to state motor vehicle laws, strongly suggest that "[t]he sanction [of certificate or license revocation] therefore is principally in service to a remedial goal." <u>See</u> <u>id.</u>

Fifth, the recent decisions relied upon by the defendants do not adequately support their contention that the FAA's prior enforcement activities bar the instant lawsuit. Specifically, the cited cases address the double jeopardy implications of civil forfeiture proceedings for money or property under either 18 U.S.C. § 981 or the drug abuse prevention and control act, 21 U.S.C. § 881, where the government also undertakes a criminal

9

prosecution for essentially the same conduct.  See, e.g.,
9844 South Titan Court, 75 F.3d at 1474-75 (forfeiture under 21
U.S.C. § 881(a)(6) and (a)(7)); Perez, 70 F.3d at 346 (forfeiture
under 21 U.S.C. § 881(a)(4)); $405,089.23 U.S. Currency, 33 F.3d
at 1214 (forfeiture under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C.
§ 881(a)(6)).  In contrast to these drug cases, the government
never has initiated a forfeiture proceeding against the
defendants and, prior to the filing of the instant civil lawsuit,
the FAA's actions have focused exclusively on the distinctly
remedial goal of maintaining air traffic safety through
compliance with the law.[3]

---

[3]The defendants also contend that jeopardy has attached
because the First Circuit's 1962 decision in Pangburn, and the
more recent decisions of the Ninth and Tenth Circuits in Go
Leasing, Inc. v. National Transportation Safety Bd., 800 F.2d
1514 (9th Cir. 1986), and Hill v. National Transportation Safety
Bd., 886 F.2d 1275 (10th Cir. 1989), indicate that the suspension
of an aviation certificate may also serve a punitive,
disciplinary, or deterrent function.  See Defendants' Reply
Memorandum at ¶¶ 6-9.

The argumant fails.  First, none of these cases addresses
the nature of an FAA enforcement sanction in a double jeopardy
context.  Second, even assuming the aviation laws also authorize
punitive sanctions, this alone cannot trigger double jeopardy
where the actual sanction at issue in the case at bar is
considered remedial under a Stoller analysis.  See Allen, No. 95-
2057, slip op. at 10 ("Legislatures routinely combine punitive
and remedial measures in a single piece of legislation and that
unremarkable fact, without more, tells a court very little about
the intrinsic nature of a particular administrative sanction.").
Third, as recently as this week the First Circuit has reiterated
the view that "[w]hen applying the totality-of-the-circumstances
test to a civil sanction, the fact that the sanction may be aimed
partially at deterrence is merely one factor to be taken into

10

The court finds that the FAA's prior enforcement actions do not constitute punishment for double jeopardy purposes given, inter alia, the legitimate, non-punitive safety aims of the federal aviation laws, the remedial goals and language of the specific statutes governing pilot and carrier certification, and the appropriately tailored and non-monetary nature of the administrative sanction at issue.

## Conclusion

The defendants' second motion to dismiss (document no. 55) is denied.

This case is scheduled for a bench trial on Monday, April 8, 1996.  The court understands from the reprentations of counsel that the parties have resolved their dispute with respect to all questions of liability.  Accordingly, the trial will focus exclusively on the issue of damages.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 29, 1996

cc:  Patrick M. Walsh, Esquire
     John P. Kalled, Esquire

_____

account in the decisional calculus." Id. at 15.

11