Dane T. **ROUNDTREE,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

In re Lawrence B. **SMITH,** Appellant,

Dane T. **ROUNDTREE, Plaintiff,**

v.

**UNITED STATES of America,**
Defendant–Appellee.

Nos. 93–35792, 93–36160.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 2, 1994 *.

Decided Nov. 22, 1994.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Circuit Rule 34–4.

Mickale Carter, Asst. U.S. Atty., Anchorage, AK, and Robert A.K. Doehl and Wendy L. Rome, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: WRIGHT, BEEZER, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Dane T. Roundtree brought this action against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671–2680. In it he asserted that the Federal Aviation Administration (FAA) tortiously suspended his pilot's certificate and revoked the operating certificate of a corporation, Alaskan Island Air, Inc. (AIA). At root, the basis of his action is that the FAA has no authority to suspend or revoke certificates in response to violations of safety regulations. The district court dismissed this action for lack of jurisdiction. It also imposed sanctions upon his attorney, Lawrence B. Smith. Both Roundtree and his attorney have appealed. We affirm.

## BACKGROUND

Roundtree is a holder of an airline transport pilot certificate, which allows him to carry passengers and cargo for hire. He also owned the stock of AIA. In 1989, the FAA issued an emergency order that revoked AIA's operating certificate. At the same time, it initiated an action to revoke Roundtree's pilot certificate. It asserted that the actions were necessary to protect the public interest and safety in air commerce because it had discovered a number of violations of federal aviation regulations.

Administrative proceedings then ensued, and the National Transportation Safety Board ultimately upheld a 150–day suspension of AIA's operating certificate and a thirty-day suspension of Roundtree's pilot's certificate.

Roundtree then brought this action. In it he asserted that the United States was liable to him under the FTCA because the FAA

Lawrence P. Smith, Tucson, AZ, for plaintiff-appellant.

and its employees had been guilty of negligence. That, according to him, occurred because they had negligently construed the Federal Aviation Act to permit them to revoke or suspend certificates, whereas they had no authority to do so. He also stated that this constituted an unconstitutional assumption of legislative power. He added that the FAA had negligently defamed him when it announced that he and AIA had been charged in the proceedings, and why.

The district court dismissed for lack of jurisdiction and sanctioned Roundtree's attorney, Smith.[1] These appeals ensued.

## STANDARD OF REVIEW

■ We review de novo a decision to dismiss a complaint for lack of jurisdiction. See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994); Hooker v. United States Dep't of Health & Human Servs., 858 F.2d 525, 529 (9th Cir.1988). A district court's imposition of sanctions pursuant to Federal Rule of Civil Procedure 11 is subject to review for abuse of discretion. See Hendrix v. Naphtal, 971 F.2d 398, 400 (9th Cir.1992).

## JURISDICTION

There can be little doubt that the district court correctly dismissed this action for lack of jurisdiction. The action was brought under the FTCA, so we will devote our attention to that. In doing so, we must first dispose of two arguments, or emanations from Roundtree's complaint, that are not central to the coverage of that Act.

■ First, it is pellucid that the United States cannot be sued on the theory that there has been a violation of Roundtree's constitutional rights. See FDIC v. Meyer, — U.S. —, —, 114 S.Ct. 996, 1001, 1004–06, 127 L.Ed.2d 308 (1994). Second, Roundtree cannot use the FTCA as a means of obtaining review of the particular orders of suspension in this case. The exclusive jurisdiction to review those orders lay in the United States Courts of Appeals. See 49

U.S.C. app. § 1486; Clark v. Busey, 959 F.2d 808, 811 (9th Cir.1992); Nevada Airlines, Inc. v. Bond, 622 F.2d 1017, 1020 n. 5 (9th Cir.1980); cf. Mace v. Skinner, 34 F.3d 854, 857 (9th Cir.1994). His failure to obtain relief in those courts did not free him to bring an action in the district court.

■ We turn, then, to the FTCA itself and, in particular, to 28 U.S.C. § 2680(a) which reads as follows:

The provisions of ... section 1346(b) of this title shall not apply to (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Roundtree cannot breach the "discretionary function" revetment erected by § 2680(a). In demonstrating that this is so, we need not look much further than United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). There the Court defined the contours of the discretionary function exception in the following language:

First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.

Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. Time and again the legislative history refers to the acts of regulatory agencies as examples of those covered by the exception, and it is significant that the early tort claims bills considered by Congress specifically exempted two major regulatory agencies by name. This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished

---

1. The district court also stated that Roundtree could not sue on behalf of AIA. Of course, that corporation is a separate entity, which can, and must, sue for itself, if it so desires. See Alaska Stat. § 10.06.010.

to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Id.* at 813–14, 104 S.Ct. at 2764–65 (citations omitted). The Court went on to answer a challenge regarding the manner in which the FAA regulated the certification of the design and safety of aircraft as follows:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.

*Id.* at 819–20, 104 S.Ct. at 2767. *See also Berkovitz v. United States,* 486 U.S. 531, 536–39, 108 S.Ct. 1954, 1958–60, 100 L.Ed.2d 531 (1988); *Summers v. United States,* 905 F.2d 1212, 1214 (9th Cir.1990).

That is exactly what is involved in this case. The FAA and its employees are entrusted with assuring air safety in a way that will protect everyone who flies and everyone on the ground as well. That requires the issuance and revocation of certificates when necessary. It is difficult to imagine a more policy-driven mission or a more policy-driven set of actions by an administrative agency. *See Foster v. United States,* 923 F.2d 765, 769 (9th Cir.1991) (the FAA's issuance of a medical certificate to a pilot is a discretionary function).

The FAA has acted in its "role as a regulator of the conduct of private individuals" by adopting rules and regulations and the methods of assuring compliance with them. *Varig Airlines,* 467 U.S. at 813–14, 104 S.Ct. at 2764. The adoption and enforcement of these rules is grounded in the "social, economic, and political" policies of assuring safe-

ty in the use of aircraft. *Id.* at 814, 104 S.Ct. at 2765. Finally, decisions to issue and to take action to suspend or revoke certificates are clearly the kinds of decisions that affect the "feasibility and practicality" of the whole regulatory program. *Id.* at 820, 104 S.Ct. at 2767. In short, taking certificate action as a method of assuring that the federal aviation regulations will be followed "is an inherently policy-oriented decision that requires consideration of social and economic policies." *Foster,* 923 F.2d at 769.

Here Roundtree seeks to attack the whole underlying basis of the FAA's authority to issue and enforce rules and regulations which affect certificates. By no stretch of the imagination could this broad attack on the underlying power and discretion of a federal agency to carry out its mandate be within the scope of FTCA liability. Were it otherwise, the whole of our public and administrative law would be subsumed within the FTCA.

If there were any residual doubt about the application of these principles to this case, that would be dispelled by our decision in *Go Leasing, Inc. v. National Transp. Safety Bd.,* 800 F.2d 1514 (9th Cir.1986). In that case, we expressly held that the FAA has the discretionary authority both to select sanctions and to impose sanctions upon certificate holders. *Id.* at 1518–20. We, by the way, went on to hold that assorted arguments that the regulations are unconstitutional and were improperly adopted or beyond the power of the FAA were all otiose. *Id.* at 1522–26. Those same arguments form the foundation of this case.

In fine, under no reasonable view of the law could there be FTCA jurisdiction in this case. Thus, the district court properly dismissed it.[2]

## SANCTIONS

Smith has appealed the sanctions imposed upon him pursuant to Federal Rule of Civil Procedure 11. Of course, sanctions under that rule are appropriate when "the claims ... and other legal contentions there-

---

**2.** We do not ignore the defamation claim. However, that is barred by the express language of

the FTCA. 26 U.S.C. § 2680(h).

in are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11(b)(2).

The palpable lack of FTCA jurisdiction over this case would itself allow the district court to impose sanctions. But, as a brief history will demonstrate, there are even more powerful reasons to impose them upon Smith. A number of years ago, Smith became enamored of the theory that the FAA does not have the authority to take the kind of certificate actions it took in this case. *See* Lawrence B. Smith, *FAA Punitive Certificate Sanctions: The Emperor Wears No Clothes; Or, How Do You Punish a Propeller?*, 14 Transp. L.J. 59 (1985). Once he embraced that idea, he climbed upon a hobbyhorse from which nothing has dislodged him. We can agree with the famous author who wrote "[S]o long as a man rides his Hobby–Horse peaceably and quietly along the King's highway, and neither compels you or me to get up behind him ... what have either you or I to do with it?" Laurence Sterne, *Tristram Shandy* 13 (Modern Library 1950).

Unfortunately, Smith does compel others to "get up behind him." He has brought his theory to court time after time and has been told that he is wrong. *See, e.g., Knipe v. Skinner,* 19 F.3d 72, 74–78 (2d Cir.1994) (*Knipe II* ); *Knipe v. Skinner,* 999 F.2d 708 (2d Cir.1993); *Rochna v. National Transp. Safety Bd.,* 929 F.2d 13, 15–16 (1st Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); *Tearney v. National Transp. Safety Bd.,* 868 F.2d 1451, 1454 (5th Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989); *Komjathy v. National Transp. Safety Bd.,* 832 F.2d 1294, 1296 (D.C.Cir.1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988); *Go Leasing,* 800 F.2d at 1516. Each time he has induced a plaintiff and forced the government to go through essentially the same expensive exercise; each time he has forced courts to adjudicate essentially the same issues. Of course, *Go Leasing* is one of our cases, and now he attempts to have us revisit the claims and theories rejected there. *Cf. Mace,* 34 F.3d at 858 n. 2 (there is jurisdic-

tion against FAA officials, but the claims have previously been rejected on their merits).

Plainly put, the complaint was patently frivolous. *See Gaskell v. Weir,* 10 F.3d 626, 628 (9th Cir.1993). Moreover, it is one of multiple complaints brought against the government and based upon the self-same theories. *See Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986). To be sure, this is not a case where the same plaintiff has sued over and over again, but that is a distinction without a difference. It is of an almost worse stripe because a lawyer has been able to beguile plaintiff after plaintiff into coming along with him as he rides his hobbyhorse against the government. We cannot say that the district court abused its discretion when it imposed sanctions upon Smith.

We recognize that when the district court issued its final sanction order—November 3, 1993—the December 1, 1993 amendment to Rule 11 had not yet gone into effect. Before December 1 sanctions were mandatory, but from that day forward they became discretionary. In *Knipe II,* 19 F.3d at 78 (citations omitted), after determining that the district court had properly imposed sanctions upon Smith for another of his actions against the United States, the Second Circuit took cognizance of the rule change and said:

> The amendment is effective December 1, 1993, and "applicable to all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Because Rule 11 sanctions should be imposed with caution ... we conclude that a just and practicable application of the amended Rule 11 requires that the district court be afforded an opportunity to exercise its discretion whether to impose sanctions under the amended version.

That is generally a sound approach. However, in this particular case a remand would not be just. Smith did not challenge the district court's methodology or the amount of the sanctions as such. Moreover, the district court's order demonstrates that it was fully aware of the abusive course of Smith's advocacy, and it is highly unlikely that the court

would choose to change its award of sanctions at this time. Finally, another trip to the district court and, perhaps, back again would simply impose further expenses and delay upon the government. There could be no just reason whatever for that. The unique history of specious legislation fostered by Smith indicates that a just application of the rule to this case militates for (nay, demands) a prompt resolution, not further delay. Therefore, we affirm the district court's award of sanctions.

## CONCLUSION

Roundtree's appeal must fail because there is no FTCA jurisdiction over his claim against the United States.

Smith's appeal must also fail. He appears to see himself as a warrior for a cause. Unfortunately he is like an andabata, and although the courts have striven mightily to lift the blinding helmet from his eyes, he has resisted. As the district court recognized, the time has come to try to uncover his eyes by using monetary sanctions.

AFFIRMED.