Mark Lee GROSSMAN, Petitioner,

v.

DEPARTMENT OF TRANSPORTATION, National Transportation Safety Board; National Transportation Safety Board, Respondents,

Federal Aviation Administration, Real Party in Interest.

No. 99–70605.
NTSB No. EA–4752.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 31, 2000.

Decided March 29, 2001.

Before B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

MEMORANDUM [1]

The petitioner, Mark Lee Grossman, is a commercial airline pilot with American Eagle who faces a fifteen-day suspension of his pilot's certificate for failing to report a September 1994 conviction in California for driving under the influence of alcohol ("DUI") within sixty days of the conviction, pursuant to 14 C.F.R. § 61.15(e). Grossman seeks review of an order of the National Transportation Safety Board ("NTSB" or "Board"), affirming the partial summary judgment order of the Administrative Law Judge ("ALJ") in favor of the

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

Federal Aviation Administration ("FAA"). We affirm the NTSB's decision and deny the petition for review.

## I.

Grossman first became licensed to fly in 1986, at which time certificate holders were required to report DUI convictions only on their airman medical certificates. In 1990, new regulations promulgated by the FAA took effect which require that DUI convictions and other "motor vehicle actions" also be reported to the FAA's security division within sixty days of the conviction. See 14 C.F.R. § 61.15(e) (1999). On September 21, 1994, Grossman was arrested for DUI in California. His driver's license was suspended, pursuant to California law which provides for automatic suspension after a DUI arrest. Although Grossman reported the DUI conviction and suspension of his driver's license when he submitted his next airman medical certificate application in April 1995, he failed to comply with the new reporting requirement under § 61.15(e). In September 1995, the FAA issued a Notice of Proposed Action, and on June 12, 1997, it issued an order suspending Grossman's pilot's certificate for thirty days, on the grounds that he "failed to report an alcohol-related motor vehicle action to the FAA, Civil Aviation Security Division, within 60 days of the motor vehicle action."[2] The Order of Suspension charged Grossman with failing to report both the conviction and the suspension of his driv-

er's license, and went on to read that "[b]y reason of your actions ... you failed to exercise the degree of care, judgment and responsibility required of the holder of an airline transport pilot certificate."

Grossman timely appealed the FAA's Order of Suspension to an ALJ of the NTSB. On September 8, 1997, the FAA filed a motion for summary judgment. Grossman then filed an opposition to the motion, citing his reliance on incorrect advice from his attorney, his "substantial compliance" with the reporting requirements, the NTSB's authority to consider mitigating factors, and his offer of proof that neither air safety nor the public interest required affirmance of the FAA's order. In a declaration filed before the ALJ, Grossman claimed that he had hired an attorney upon his arrest on the DUI charges to ensure that there would be no unexpected consequences for his pilot's certificate. After being told by his attorney that a DUI conviction would not result in the suspension of his certificate, Grossman elected to enter into a plea bargain. However, his attorney failed to inform Grossman that the Federal Aviation Regulations ("FARs") had changed since he became a pilot, and that he was required to file a separate report pursuant to § 61.15(e). Grossman thus argued that he was unaware of this new requirement, that he had no incentive or intent to deceive the FAA, and that his self-reporting of the

---

**2.** 14 C.F.R. § 61.15(c) (1999) defines a "motor vehicle action" as:

(1) A conviction after November 29, 1990, for the violation of any Federal or State statute relating to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug;

(2) The cancellation, suspension, or revocation of a license to operate a motor vehicle after November 29, 1990, for a cause relat-

ed to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug; or

(3) The denial after November 29, 1990, of an application for a license to operate a motor vehicle for a cause related to the operation of a motor vehicle while intoxicated by alcohol or a drug, while impaired by alcohol or a drug, or while under the influence of alcohol or a drug.

incident on his April 1995 medical certificate was evidence of such lack of intent.

On October 1, 1997, the ALJ granted partial summary judgment in favor of the FAA. The ALJ reduced the complaint against Grossman to a single allegation of failing to report the suspension of his driver's license within sixty days, and then found in favor of the FAA on the basis of a "regulatory violation" of § 61.15(e)'s reporting requirements. On November 25, 1997, the ALJ issued his decision as to sanctions, reducing the suspension from thirty to fifteen days. In the decision, the ALJ made a factual determination that Grossman "was unaware of the reporting requirements of Section 61.15, FARs, and moreover, had reasonably relied upon the Counsel he had retained to represent him in the Court actions either to file a report with the FAA or advise of the requirements of Section 61.15, FARs." Nonetheless, the ALJ ruled that such mitigating circumstances were irrelevant with respect to sanctions, and accordingly denied Grossman's request to vacate the suspension or convert it to a civil penalty.

Grossman timely appealed the ALJ's decision to the NTSB. On April 22, 1999, the NTSB issued its decision denying Grossman's appeal. On May 13, 1999, Grossman filed this petition for review in this circuit. The NTSB has granted a stay of the suspension pending our review.

## II.

This court has jurisdiction under 49 U.S.C. § 1153 (1994), which provides for judicial review of final NTSB orders when a petition is filed within sixty days after such an order is issued. In addition, we have jurisdiction under 49 U.S.C. §§ 44709 and 46110, which permit persons "substantially affected by an order of the Board" to obtain judicial review of the order.

Judicial review of NTSB decisions "is narrowly circumscribed." *Janka v. Dept.* *of Transp.*, 925 F.2d 1147, 1149 (9th Cir. 1991); *see also Essery v. Dep't of Transp.*, 857 F.2d 1286, 1288 (9th Cir.1988). Pursuant to the Administrative Procedures Act, 5 U.S.C.A. § 706(2)(A) (West 1996), decisions of the Board must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Findings of fact made by the Board are conclusive if supported by substantial evidence. *Kolek v. Engen*, 869 F.2d 1281, 1284–85 (9th Cir.1989). Purely legal questions implicated by an NTSB order are reviewable de novo. *Go Leasing, Inc. v. NTSB*, 800 F.2d 1514, 1517 (9th Cir.1986).

## III.

In this appeal, Grossman claims that he was unaware of the sixty-day reporting requirement, which went into effect after he became a licensed pilot, and that he relied on the mistaken advice of an incompetent attorney in failing to comply with the regulations. As noted above, Grossman did report the DUI conviction when he submitted his next medical certificate in April 1995, in accordance with the regulatory regime that had been in effect when he became a pilot. Coupled with the fact that a DUI conviction would not by itself have resulted in the suspension of his pilot's license, Grossman cites such self-reporting as evidence that he did not intend to deceive the FAA. He also claims that such facts, which were found to be true by the ALJ, demonstrate that he "substantially complied" with the regulatory reporting requirements, and that he did not (as contended by the FAA) fail to "exercise the degree of care, judgment and responsibility required of the holder of an airline pilot's certificate." Grossman therefore contends that under these circumstances, converting his suspension to a civil penalty would not contravene the regulations' legitimate purpose of furthering public safety.

Put another way, Grossman claims that the NTSB acted arbitrarily and capriciously in failing to consider such mitigating facts and circumstances in reaching its decision. By effectively declaring that such facts are irrelevant under a summary judgment standard, Grossman argues that the NTSB arbitrarily refused to exercise its statutory grant of discretion, while failing to promote its mandate of public safety. Furthermore, Grossman accuses the NTSB of a potential constitutional violation by depriving him of a substantial property right. Perhaps most important, Grossman claims that the NTSB's decision does not comport with similar cases in which it properly considered extenuating circumstances. As such, he urges that the Board erred in affirming the ALJ's grant of partial summary judgment in favor of the FAA. We consider each of these arguments in turn.

"The NTSB reviews certificate sanctions by the FAA to determine whether they are required by air safety and the public interest." *Kolek*, 869 F.2d at 1284 (citing 49 U.S.C.A. § 1429(a) (West 1982)). Although the NTSB's rules do not provide specific standards for reviewing the grant or denial of summary judgment, the NTSB has held that summary judgment is appropriate when there are no material issues of fact remaining for resolution. *See Administrator v. Pinney*, NTSB Order No. EA–3545 at 3, *aff'd sub nom., Pinney v. NTSB*, 993 F.2d 201 (10th Cir.1993).

In challenging the NTSB's decision to affirm the suspension of his license, Grossman faces an uphill battle under our case law. As we stated in *Go Leasing*, "Agencies charged with a prosecutorial function must have flexibility in confronting the varieties of facts presented in particular cases." *Go Leasing*, 800 F.2d at 1518 (citation omitted). "[R]eviewing courts cannot reverse the agency decision simply because it (sic) might believe that the pub-

lic interest could best be served by a different decision." *Id.* at 1518–19 (internal quotations omitted). In short, "[t]he arbitrary and capricious standard requires that a wide deference be given to an agency's choice of sanction." *Id.* (internal quotations omitted).

■ As an initial matter, we find that Grossman's claim of ignorance of the change in regulations does not amount to a valid defense. As the Board stated in *Administrator v. Notoozi*, NTSB Order No. EA–4284 at 4 (Nov. 10, 1994), "Duly promulgated regulations provide constructive notice of their requirements, and are legally binding regardless of actual notice." In addition, in publishing the final rule, the FAA expressly provided that reporting a motor vehicle action on a medical certificate application was not a substitute for the separate reporting requirements of § 61.15(e). *See* Final Rule, *Pilots Convicted of Alcohol-or Drug–Related Motor Vehicle Offenses of Subject to State Motor Vehicle Administrative Procedures*, Fed. Reg. 31,300, 31,304 (Aug. 1, 1990); *see also Administrator v. Kearney*, NTSB Order No. EA–4208 at 3–4 (July 5, 1994) (rejecting the appeal of a pilot who failed to report a DUI conviction on the ground that he was unaware of the reporting requirement under § 61.15(e) because he had temporarily "retired" from flying in 1987, and had not kept up with the changes in the rules). Furthermore, the NTSB has held in the past that intent is not an element of a § 61.15(e) violation, and that reliance on an attorney does not constitute a valid excuse for noncompliance. *Administrator v. Wilson*, NTSB Order No. EA–4314 at 5 (January 19, 1995). Accordingly, we decline to find that the Board acted arbitrarily in rejecting these aspects of Grossman's appeal.

■ Grossman raises a stronger claim, however, in arguing that the NTSB has considered mitigating circumstances at

least once before in its sanctioning of motor vehicle actions. We have found that the failure to impose sanctions uniformly, at least without sufficient justification, may constitute an abuse of discretion. For example, in reversing a decision of the Board in *Essery*, we "recognize[d] that the NTSB is charged with enforcing safety and that the authority to issue appropriate sanctions is necessary to allow it to meet its obligation. However, the NTSB is not entitled to disregard its own rule requiring uniformity of sanctions." *Essery*, 857 F.2d at 1293. Furthermore, we found that the Board "ha[d] given no satisfactory reason why Essery's conduct warrants a greater or lesser penalty than has generally been imposed on others in the past for like violations." *Id.* (internal quotations omitted). In sum, "[b]ecause the FAA failed to show any justification for deviating from its established pattern and its policy of uniformity," we "concluded that the NTSB's affirmance of revocation was an abuse of discretion." *Kolek*, 869 F.2d at 1285. *Cf. Winslow v. NTSB*, 885 F.2d 615, 618 (9th Cir.1989) (holding that although a decision to impose a 90–day suspension of a pilot's license for flying beneath a required altitude was "at the high end of the sanction scale for similar violations, it is not entirely unsupported by precedent" and therefore "was not arbitrary and capricious or an abuse of its broad discretion").

In this light, Grossman relies heavily on *Administrator v. Smith*, NTSB Order No. EA–4088 (Feb. 14, 1994), a decision in which the Board elected not to suspend a pilot's certificate in spite of an unreported DWI conviction. In *Smith*, the pilot had contacted a regional FAA office to inquire about his reporting requirements immediately after the motor vehicle incident. He was reminded of his reporting obligations on the medical certificate application, but was not told of the separate requirement under § 61.15. In light of this unrebutted testimony, the Board decided to rule against the FAA and reduce Smith's sanction so as to revoke the suspension of his airman certificates. Significantly, the Board rejected the notion that Smith had "substantially complied" with the reporting obligations, holding that "[e]ven if substantial compliance were a valid defense, in this case we would not find that respondent substantially complied with § 61.15(e) because he did not submit any information, in any form, to FAA's Security Division." *Id.* at 5–6. Still, the Board held that given "the peculiar circumstances of this case," *id.* at 9, Smith "should not suffer a certificate suspension for his reporting failure," *id.* at 6, because "safety in air commerce or air transportation and the public interest do not require affirming the Administration's order to the extent it suspends respondent's certificate." *Id.* at 2.

As the Board noted in denying Grossman's appeal, however, Smith reported his DWI conviction on a medical certificate application that was submitted only eleven days after his conviction. The FAA had therefore effectively received notice of Smith's infraction within the sixty-day period that the regulations under § 61.15 were designed to enforce, thereby satisfying "the FAA's interests in obtaining timely information from pilots with a recent history of DWI offenses." *Id.* at 9. Grossman, on the other hand, did not apply for a new medical certificate until approximately eight months after his DUI conviction in September 1994; thus, the purposes underlying § 61.15 [3] were effectively thwart-

---

**3.** As described in the statement accompanying the publication of the final rule, the underlying purpose behind § 61.15 was "to enhance airline safety in air travel and air commerce" and "to remove from navigable airspace pilots who have demonstrated an unwillingness or inability to comply with certain safety regulations and to assist in the identification of personnel who do not meet

ed by his failure to timely file the report with the FAA security division. Furthermore, and most importantly, Grossman does not claim to have reasonably relied on the mistaken advice of the FAA, but instead on that of an incompetent lawyer. For these reasons, the NTSB distinguished *Smith* and held that Grossman's claims in mitigation did not merit reversing the FAA's Order of Suspension.

In seeking a reversal of the Board's decision, then, Grossman's petition before this court essentially boils down to the argument that the Board should be forced to consider other extenuating circumstances that are not the direct result of the FAA's own actions, and that finding such circumstances to be immaterial under a summary judgment standard amounts to an abuse of discretion. This, however, we decline to do. In light of the material differences distinguishing Grossman's case from *Smith,* the NTSB's decision to suspend Grossman's license was supported by substantial evidence and therefore sufficiently justified. Furthermore, the Board's choice of sanction largely accords with the other decisions it has made in the context of motor vehicle actions, and therefore does not violate the rule of uniform sanctions. *See, e.g., Kearney,* supra; *Wilson,* supra; *Administrator v. Anderson,* NTSB Order No. EA–4072 (January 27, 1994) (affirming the thirty-day suspension of a commercial pilot certificate for failing to report a motor vehicle action under § 61.15(e)). In sum, the fifteen-day suspension accorded Grossman comports with the sanctions imposed in prior NTSB rulings, and Grossman's central argument fails under the broad discretion afforded the Board's decisions.

Finally, Grossman claims a substantive due process violation, inasmuch as the arbitrary suspension of his airman certificates would amount to the unconstitutional deprivation of a significant property right. This claim is readily dismissed, for no other reason than it depends on a finding that the Board acted arbitrarily in the first place. Such problematic claims of substantive due process in the context of the FAR's are, in any event, largely foreclosed by our decision in *Go Leasing,* 800 F.2d at 1523–24.

## IV.

We have consistently upheld the broad discretion afforded the Board in its choice of sanctions under the "arbitrary and capricious" standard of review. Furthermore, the NTSB's decision was supported by substantial evidence and is generally consistent with its prior decisions. Even taking all the facts alleged by the petitioner to be true, the Board acted within its statutory and regulatory authority in ruling against the petitioner as it did. Ultimately, therefore, we hold that the NTSB did not act arbitrarily and capriciously nor did it abuse its discretion in affirming the ALJ's grant of partial summary judgment.

Petition is DISMISSED.

the medical standards of the regulations." *See* Final Rule, *Pilots Convicted of Alcohol-or Drug–Related Motor Vehicle Offenses of Subject to State Motor Vehicle Administrative Procedures,* Fed.Reg. 31,300, 31,309 (Aug. 1, 1990). As the respondents argue, the 60–day

reporting requirement in § 61.15(e) obviously facilitates the more rapid identification of pilots with drug and alcohol problems than waiting for such disclosures on their periodic medical certification applications.